# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**STACY R. ULIANA**
Bargersville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

**FILED**
Nov 19 2013, 6:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| ANTHONY SCOTT BRATCHER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  90A02-1301-CR-3 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable Kenton W. Kiracofe, Judge
Cause No. 90C01-1206-FB-6

**November 19, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Anthony Scott Bratcher ("Bratcher") appeals his sentence, following his guilty plea, for Class B felony child molesting.[1]  Bratcher also challenges the sex offender probation conditions that restrict his access to the internet and that limit his contact with children, arguing that they are vague, overbroad, and unconstitutional as applied to him.

We affirm.

## ISSUES

1.  Whether Bratcher's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

2.  Whether the trial court abused its discretion by imposing sex offender probation conditions that restrict Bratcher's access to the internet and his contact with children.

## FACTS

On June 4, 2012, eighteen-year-old Bratcher pulled down the pants of a five-year-old neighbor girl, A.E.D., and then touched and kissed her "pee pee" or vaginal area. (Tr. 27).  A.E.D. immediately reported the molestation to her parents, who called the police. When the police interviewed Bratcher, he admitted that he had touched and kissed A.E.D.'s vagina and stated that it "excite[d] him" when he did so. (Tr. 28).  Additionally, Bratcher told police that he had also kissed A.E.D. on the lips.

The State charged Bratcher with Class B felony child molesting.  On October 19, 2012, Bratcher pled guilty as charged without a plea agreement.  The trial court held a sentencing hearing on December 10, 2012.  The presentence investigation report ("PSI")

---

[1] Ind. Code § 35-42-4-3(a).

revealed that Bratcher, who was nineteen years old at sentencing, has a history of juvenile adjudications, including an adjudication for Class B felony child molesting if committed by an adult. Bratcher's juvenile adjudications began at age twelve and required placement in a juvenile facility from age thirteen to eighteen.

Specifically, in August 2005, when Bratcher was twelve years old, he was adjudicated as delinquent for running away from home and committing criminal mischief. He spent one month in the Allen County Juvenile Center ("the juvenile center") and was then released to juvenile probation. Two months later, while still on probation, Bratcher received his second adjudication, this time for Class D felony theft if committed by an adult. Bratcher spent another month at the juvenile center, was placed on probation for this theft adjudication in December 2005, and then released from probation in August 2006. One month after being released from probation, Bratcher received his second adjudication for Class D felony theft if committed by an adult.

In January 2007, while on probation for theft, thirteen-year-old Bratcher admitted to molesting an eight-year-old neighbor boy and was adjudicated a delinquent for Class B felony child molesting if committed by an adult. Bratcher spent the next four plus years on probation in various juvenile placement facilities for this child molesting adjudication. After two and one-half years in a more restrictive placement, Bratcher was transitioned to a less restrictive group home placement. However, due to interacting and socializing problems in this setting, he had to be moved back to a more structured placement to "ensure he was not a danger to the community." (App. 157). During the four plus years of juvenile placement, he violated probation seven times and also received a reprimand

3

for Class A misdemeanor battery. An addendum to the PSI reveals that Bratcher violated probation by writing a sexually explicit letter to a teacher, pushing a duress button at school, breaking the leg of a chair and threatening staff with it, destroying property, engaging in inappropriate behavior, and failing to comply with staff requests.

While Bratcher was in these juvenile placement facilities, he participated in groups to address "sex offending issues, anger management, addiction issues, thinking errors, and daily living skills." (Tr. 132). As part of his placement, he was placed in the Aftercare Phase of the Adolescent Sex Offender Program. In late October 2011, eighteen-year-old Bratcher was released from placement from his child molestation adjudication and was returned to the custody of his mother. Approximately seven months later, Bratcher committed the molestation at issue in this appeal.

During the sentencing hearing, the State presented testimony from the probation officer regarding Bratcher's scores on various risk assessment instruments. The probation officer explained that the Indiana Risk Assessment System ("IRAS") was an instrument for assessing all offenders by using broad categories while the STATIC 99 was a specific tool for assessing a sex offender's risk of reoffending. The probation officer explained that Bratcher's score on the IRAS indicated a moderate risk to reoffend while his score on the STATIC 99 revealed a high risk of reoffending on sex offenses.

During the hearing, Bratcher stated that the majority of the time he spent in the juvenile placement facilities was focused mainly on anger and social interaction issues and not as much on sex offender therapy. He claimed that he did not participate in sex offender therapy until the last few months of his placement.

4

The trial court found the following mitigating factors: (1) Bratcher immediately confessed to the crime; and (2) Bratcher's guilty plea, which spared the victim from testifying at trial. The trial court found the following aggravating circumstances: (1) Bratcher's juvenile delinquent history; (2) the victim's young age of five years old; (3) Bratcher's history of violating juvenile probation. When sentencing Bratcher, the trial court stated:

> Concerning the Court is that this is now the second victim [Bratcher] has created. First victim being eight years old when the offense was committed, the second one now five, it concerns the Court the he commits this offense within six months or more, very short period of time of being released from in placement, that's concerning. Also concerned that based on what I read in the presentence investigation report[,] Mr. Bratcher does not have the family and social support when he is release and my concern, I have two concerns, one for Mr. Bratcher in that he is going to exit the prison gates with literally no support, second concern is he is going to exit the prison gates with very little education or training or counseling for his offenses here that apparently now have shown a little bit of pattern and my concern is he will reoffend if he does not receive some type of treatment. I realize [Bratcher's] counsel's concern that this sets him up for, sets him up for failure if he is given any time on probation, but I also think that without some type of counseling it also sets him up for failure and also places the community at risk because now we have someone who has now twice violated small children and he's going to be a very young man when he is released and will be placed in the community with little or no support system in place.
>
> The concern to the Court is and I'm not surprised by the moderate risk on the IRAS assessment based upon this Court's experience with individuals charged with sex crimes to be a situation where they do have little or no criminal history and so the Court's not entirely surprised with the IRAS assessment. I think the STATIC 99 indicator is a little more appropriate as well as it shows he would be a high risk to reoffend. I think the State's position reflects the concerns the Court has that 1) the Defendant be held accountable for his actions; and 2) that gives him potentially the resources he'll need to be part of society because ultimately he's going to be back in society in this community once he's finished serving his sentence and so hopefully he can put an end to his behavior and stop victimizing individuals and potentially become a productive adult and do

5

what he needs to do to manage the urges and things that he apparently has here.

(Tr. 40). The trial court then imposed a twenty (20) year sentence, with fifteen (15) years executed in the Department of Correction and five (5) years suspended to probation.

The trial court also issued an Order of Probation, which contained general conditions of probation, and an Addendum Order of Probation, which contained "special conditions" of probation "as a result of [Bratcher's] sex offense conviction[.]" (App. 39). These special conditions included the following, which Bratcher challenges in this appeal:

> 15. You shall have no contact with any person under the age of 16 unless you receive court approval or successfully complete a court-approved sex offender treatment program, pursuant to IC 35-38-2-2.4. Contact includes face-to-face, telephonic, written, electronic, or any indirect contact via third parties.
>
> * * * * *
>
> 17. You shall not participate in any activity which involves children under 18 years of age, such as, but not limited to, youth groups, Boy Scouts, Girl Scouts, Brownies, 4-H, YMCA, YWCA, or youth sports teams, unless given permission by the Court.
>
> * * * * *
>
> 21. You shall not access the Internet or any other on-line service through use of a computer, cell phone, iPod, Xbox, Blackberry, personal digital assistant (PDA), pagers, Palm Pilots, televisions, or any other electronic device at any location (including your place of employment) without prior approval of your probation officer. This includes any Internet service provider, bulletin board system, e-mail system or any other public or private computer network. You shall not possess or use any encryption technique or program.
>
> * * * * *
>
> 23. You are prohibited from accessing or using certain web sites, chat room, or instant messaging programs frequented by children. You are prohibited from deleting, erasing, or tampering with information on your personal computer with intent to conceal an activity prohibited by this condition. *Required as a condition of probation by IC 35-38-2-2.2(4).

6

(App. 40-41). The trial court read these probation conditions to Bratcher during the sentencing hearing, and he did not object to them. Bratcher did, however, ask the trial court if the condition regarding restricted access to the internet was to apply at all times or only during probation. The trial court responded that it applied while he was on probation and instructed him that he could speak to his probation officer about obtaining internet access. Bratcher replied that he would need access to the internet for employment purposes because applications were "all online now." (Tr. 47). The trial court responded that Bratcher would be able to talk with his probation officer about "how [he could] do that in the future[.]" (Tr. 47). Bratcher signed the Addendum Order of Probation and agreed to comply with "special probation conditions." (App. 41). Bratcher now appeals his sentence and these special probation conditions.

DECISION

1. Sentence

Bratcher contends that his sentence for his Class B felony child molesting conviction is inappropriate. Specifically, Bratcher argues that the trial court's imposition of the "maximum" sentence was inappropriate because it was his first adult conviction and because he pled guilty. (Bratcher's Br. 7). He also suggests that the trial court erred by considering his risk assessment scores on the STATIC 99. Bratcher asks this Court to revise his sentence to the advisory term of ten (10) years with four (4) years suspended to probation.

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the

7

burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224. Additionally, "[u]nder Indiana law, several tools are available to the trial court to use in fashioning an appropriate sentence for a convicted offender." *Sharp v. State*, 970 N.E.2d 647, 650 (Ind. 2012). These "penal tools"—which include suspension of all or a portion of the sentence, probation, home detention, community corrections program placement, executed time in a Department of Correction facility, concurrent rather than consecutive sentences, and restitution and fines—"form an integral part of the actual aggregate penalty faced by a defendant and are thus properly considered as part of the sentence subject to appellate review and revision." *Id.* (citing *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010)).

When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, Bratcher pled guilty as charged to the Class B felony child molesting charge without a written plea

8

agreement.[2]  The sentencing range for a Class B felony is between six (6) and twenty (20) years, with the advisory sentence being ten (10) years.  I.C. § 35-50-2-5.  The trial court imposed a twenty (20) year sentence, with fifteen (15) years executed and five (5) years suspended to probation.

We first address Bratcher's contention that his sentence is inappropriate because it was a "maximum" sentence.  We have previously explained that "for purposes of Rule 7(B) review, a maximum sentence is not just a sentence of maximum length, but a *fully executed* sentence of maximum length" and that "[a]nything less harsh, be it placement in community corrections, probation, or any other available alternative to prison, is simply not a maximum sentence."  *Jenkins v. State*, 909 N.E.2d 1080, 1085-86 (Ind. Ct. App. 2009), *trans. denied*.   Here, the trial court suspended a portion of Bratcher's sentence and placed him on probation.  Thus, Bratcher did not receive a maximum sentence for purposes of Appellate Rule 7(B).  *See id.*

Moving to the nature of Bratcher's offense to which he pled guilty, we can see from the record before us, which includes the police report that was attached to the PSI, that A.E.D. was playing with other children at a neighbor's house where Bratcher was staying.  After the other children left, Bratcher went inside the house with A.E.D.  Bratcher kissed the five-year-old girl on the lips, pulled down her pants, and kissed and

---

[2] We note that Indiana Code § 35-35-3-3(a) requires that a plea agreement on a felony charge be made "in writing" and "before the defendant enters a plea of guilty."  Recently, we explained that "'[t]he purpose behind [Indiana Code § 35-35-3-3] is to insure that a defendant does not base his guilty plea upon certain promises made by the prosecutor where the judge has in fact not accepted the [S]tate's recommendation.'"  *Gil v. State*, 988 N.E.2d 1231, 1234 n.2 (Ind. Ct. App. 2013) (quoting *Davis v. State*, 418 N.E.2d 256, 260 (Ind. Ct. App. 1981)).  However, we also explained that "failure to reduce an agreement to writing need not itself be deemed a sufficient ground for rejection" of a defendant's guilty plea.  *Gil*, 988 N.E.2d at 1234 n.2 (quoting *Centers v. State*, 501 N.E.2d 415, 417–18 (Ind. 1986)).

touched her vaginal area. Bratcher told police that he thought A.E.D. was eight or nine years old. Bratcher also told police that he was going to touch A.E.D.'s butt under her pants and that he stopped when A.E.D.'s father knocked on the door.

Bratcher attempts to minimize the nature of his offenses by arguing that his offense was "not more egregious than the average molest" because he was not in a position of trust and did not physically harm or threaten to harm A.E.D. (Bratcher's Br. 7). Citing to *Tyler v. State*, 903 N.E.2d 463, 469 (Ind. 2009), Bratcher argues that "the nature of [his] offense is more in line with the advisory sentence as contemplated by the legislature." (Bratcher's Br. 8). In *Tyler*, our Indiana Supreme Court revised the defendant's two enhanced Class A felony child molesting sentences to the advisory term based on the defendant's lack of position of trust, the lack evidence showing physical force to the victims, and the defendant's lack of criminal history for child molesting or any other sex offense. *Tyler*, 903 N.E.2d at 469. Here, however, Bratcher does have a criminal history that specifically involves a prior child molesting.

Indeed, in turning our focus to Bratcher's character, we see from the record that Bratcher—who was eighteen years old at the time of his offense—has amassed a criminal history consisting of five juvenile adjudications that began at age twelve and required placement in a juvenile facility from age thirteen to eighteen. Most troubling is that Bratcher has a juvenile adjudication for Class B felony child molesting, which is the same offense he committed here against A.E.D. When Bratcher was thirteen years old and on probation for theft, he was adjudicated a delinquent for Class B felony child molesting for molesting an eight-year-old neighbor boy. He spent the rest of his juvenile

10

life in various juvenile placement facilities for this child molesting adjudication. During this time, he violated probation seven times and received a reprimand for committing battery. As part of his placement, he was placed in the Aftercare Phase of the Adolescent Sex Offender Program. Bratcher was released from juvenile placement to the custody of his mother when he was eighteen years old. However, approximately seven months after his release, he committed the child molestation at issue in this appeal.

Arguing that he is not the worst of the worst offenders, Bratcher urges this Court to look at his young age, his willingness to plead guilty, and his troubled childhood when assessing his character. Bratcher argues that his guilty plea "reflect[ed] significantly on his character" and seems to suggest that it was not given proper consideration by the trial court. (Bratcher's Br. 10). The record, however, reveals that the trial court recognized Bratcher's age when sentencing him and specifically found his willingness to confess to the crime and plead guilty as mitigating circumstances. Furthermore, to the extent that Bratcher is challenging the weight of the significance that the trial court allocated to guilty plea, we reject such argument. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) (explaining that the relative weight assigned to mitigators is not subject to appellate review), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

We acknowledge that the PSI reflects that Bratcher has had a troubled childhood. Bratcher reported to the probation officer who compiled the PSI that he had been physically abused by his mother and stepfather and that he had been molested by his brother when he was eight years old. Bratcher further reported that he had previously taken medication for attention deficit hyperactivity disorder, conduct disorder, and

11

depression. Bratcher also reported that his mother and stepfather informed him that he was not welcome at their home upon his release from incarceration.

While Bratcher's troubled childhood that resulted in juvenile adjudications and placement in juvenile facilities is a consideration in a review of his character, so too is his behavior while in those juvenile facilities. Bratcher repeatedly violated probation under his various dispositional orders. Most significant of all these violations was that Bratcher committed child molesting while on juvenile probation for theft.

Finally, we reject Bratcher's suggestion that the trial court erred by referring to Bratcher's risk assessment scores on the STATIC 99. Our Indiana Supreme Court has explained that scores on a probation department's risk assessment instrument "are not intended to serve as aggravating or mitigating circumstances nor to determine the gross length of sentence[.]" *Malenchik v. State*, 928 N.E.2d 564, 575 (Ind. 2010). Instead, these "offender assessment instruments are appropriate supplemental tools for judicial consideration at sentencing" and can be used by the trial court "in formulating the manner in which a sentence is to be served." *Id.*

Here, the trial court used Bratcher's risk of reoffending assessment when formulating Bratcher's sentence and in deciding to place Bratcher on probation. Thus, the trial court did not err by considering Bratcher's risk of reoffending when crafting his sentence. Indeed, the record before us indicates that Bratcher is not just at a risk for reoffending; he *did* reoffend. Moreover, he committed the current child molesting offense within mere months of being released from juvenile placement from his adjudication for child molesting. Furthermore, the PSI indicates that Bratcher received

12

sex offender therapy, although he claims that his juvenile placements did not focus on sex offender therapy until the last few months. No matter what intensity or duration of therapy he received, the record supports that he did indeed receive sex offender therapy but that such treatment did not result in effective rehabilitation.

Bratcher has not persuaded us that his sentence is inappropriate. Therefore, we affirm the trial court's sentence.

2. Probation Conditions

Bratcher contends that four of his sex offender probation conditions are "unconstitutional as applied to him." (Bratcher's Br. 12).[3] Specifically, Bratcher argues that the two probation conditions that restrict his contact and interaction with children (conditions 15 and 17) are vague or overbroad and that the two conditions relating to restrictions on his internet usage (conditions 21 and 23) are unduly intrusive. Bratcher asks that we order the trial court to vacate these four probation conditions.

"Probation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment." *Carswell v. State*, 721 N.E.2d 1255, 1258 (Ind. Ct. App. 1999). Trial courts have broad discretion in determining the appropriate conditions of a defendant's probation. *Hevner v. State*, 919 N.E.2d 109, 113 (Ind. 2010). "This discretion is limited only by the principle that the

---

[3] While Bratcher argues that these probation conditions are unconstitutional "as applied" to him, we note that an "as applied" challenge generally applies only to a challenge to statutes or regulations. *See Harris v. State*, 985 N.E.2d 767, 774 n.1 (Ind. Ct. App. 2013) ("An 'as applied' challenge asks a reviewing court to "declare the challenged statute or regulation unconstitutional on the facts of the particular case."), *trans. denied.* Some of Bratcher's challenged probation conditions are based on statutes that require the imposition of certain restrictions for sex offenders. *See, e.g.*, Ind. Code §§ 35-38-2-2.2; 35-38-2-2.4. Bratcher, however, does not challenge the statutes underlying the probation conditions.

13

conditions imposed must be reasonably related to the treatment of the defendant and the protection of public safety." *Stott v. State*, 822 N.E.2d 176, 179–80 (Ind. Ct. App. 2005), *trans. denied.* Thus, "our review is essentially limited to determine whether the conditions placed on the defendant are reasonably related to attaining these goals." *Carswell*, 721 N.E.2d at 1258. We will not set aside a trial court's probation terms unless it has abused its discretion. *Collins v. State*, 911 N.E.2d 700, 707 (Ind. Ct. App. 2009), *trans. denied.*

"'Convicted individuals do not enjoy the same constitutional protections as law-abiding citizens[,]'" and "probation conditions that intrude upon constitutionally protected rights are not necessarily invalid." *Taylor v. State*, 820 N.E.2d 756, 761 (Ind. Ct. App. 2005) (quoting *Johnson v. State*, 659 N.E.2d 194, 200 (Ind. Ct. App. 1995), *reh'g denied*), *trans. denied*. *See also Gaither v. Indiana Dep't of Correction*, 971 N.E.2d 690, 695 (Ind. Ct. App. 2012) (explaining that "probation conditions may impinge upon a probationer's right to exercise an otherwise constitutionally protected right"). Where, as here, a defendant contends that a probation condition is unduly intrusive upon a constitutional right, the following three factors must be balanced: (1) the purpose sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be afforded to probationers; and (3) the legitimate needs of law enforcement. *Smith v. State*, 779 N.E.2d 111, 117 (Ind. Ct. App. 2002), *trans. denied*.

A. *Waiver*

Before turning to our review of Bratcher's challenged probation conditions, we first address the State's waiver argument. The State argues that Bratcher has waived any challenge to his probation conditions because he did not object to them at sentencing and because he signed the special probation condition form, agreeing to comply with the conditions. In support of its waiver argument, the State cites *Hale v. State*, 888 N.E.2d 314, 319 (Ind. Ct. App. 2008), *trans. denied*, and *Stott*, 822 N.E.2d at 179.

We acknowledge that our Court has issued differing opinions regarding whether a defendant's lack of objection to probation conditions at the trial level will waive an appellate challenge to those conditions. Indeed, in *Hale* and *Stott*, two panels of our Court held that the individual defendants in those cases had waived appellate review of their probation conditions by failing to object to the probation conditions at the sentencing hearing. *Hale*, 888 N.E.2d at 319; *Stott*, 822 N.E.2d at 179. *See also Patton v. State*, 990 N.E.2d 511, 514 (Ind. Ct. App. 2013) (citing *Hale*, 888 N.E.2d at 319).

However, in *Piercefield v. State*, 877 N.E.2d 1213, 1218 (Ind. Ct. App. 2007), *trans. denied*, another panel of this Court, rejected the State's argument that a defendant had waived his challenge to a probation condition by failing to object to the condition and by signing the probation condition form. The *Piercefield* Court analogized an appeal of probationary conditions to an appeal of a sentence, "which we may review 'without insisting that the claim first be presented to the trial judge'" and held that a challenge to probationary conditions need not be raised before the trial court to permit appellate review. *Piercefield*, 877 N.E.2d at 1218 (quoting *Kincaid v. State*, 837 N.E.2d 1008,

15

1010 (Ind. 2005)). The *Piercefield* Court also held that the defendant's signature on the probation form did not constitute a waiver of the issue on appeal. *Id.*

We agree with the logical reasoning of *Piercefield* and conclude that Bratcher has not waived appellate review of his probation conditions. Thus, we will review Bratcher's challenge to the conditions of his probation.[4]

B.    *Contact with Children*

Bratcher challenges the following two sex offender probation conditions that limit or restrict his contact with children:

> 15.  You shall have no contact with any person under the age of 16 unless you receive court approval or successfully complete a court-approved sex offender treatment program, pursuant to IC 35-38-2-2.4. Contact includes face-to-face, telephonic, written, electronic, or any indirect contact via third parties.
>
> * * * * *
>
> 17.  You shall not participate in any activity which involves children under 18 years of age, such as, but not limited to, youth groups, Boy Scouts, Girl Scouts, Brownies, 4-H, YMCA, YWCA, or youth sports teams, unless given permission by the Court.

(App. 40).

Bratcher argues that these probation conditions are vague and overbroad, suggesting that they are not sufficiently clear to inform him of what conduct would result in a violation of probation. The State contends that both conditions are sufficiently clear and asserts that probation conditions with similar restrictions have already been upheld by this Court and should be again in this matter.

---

[4] Indeed, even the *Hale* and *Stott* panels of our Court reviewed the defendants' challenges to their probation conditions despite holding that the defendants had waived appellate review by failing to object. *See Hale*, 888 N.E.2d at 319; *Stott*, 822 N.E.2d at 179. *See also Patton*, 990 N.E.2d at 515.

Our Court has previously observed that "child molesters molest children to whom they have access." *Smith*, 779 N.E.2d at 117 (citing *Carswell*, 721 N.E.2d at 1259). As a result, "probation conditions that reduce the potential for access to children are reasonable." *Id.* Nonetheless, probation conditions must be sufficiently clear such that they "describe with clarity and particularity the misconduct that will result in penal consequences." *Hunter v. State*, 883 N.E.2d 1161, 1163 (Ind. 2008). *See also McVey v. State*, 863 N.E.2d 434, 447 (Ind. Ct. App. 2007) ("A probationer has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison."), *reh'g denied*, *trans. denied*. A probation condition is considered vague "only if individuals of ordinary intelligence would not comprehend it to adequately inform them of the conduct to be proscribed." *Patton*, 990 N.E.2d at 516. The probation condition "need not list, with itemized exactitude, every item of conduct that is prohibited." *Id.*

Turning to Bratcher's challenge to probation condition 15, we reject Bratcher's suggestion that we should overturn his probation condition as we did the probation conditions in *McVey* or *Collins*. In *McVey*, we held that the probation condition that prohibited the defendant from being alone with or having contact—including, "face-to-face, telephonic, written, electronic, or any indirect contact via third parties"—with minors was reasonably related to the treatment of the defendant and the protection of public safety, but we overturned the probation condition because it required the defendant to report "incidental contact" with minors, which we determined to be overbroad. *See McVey*, 863 N.E.2d at 449. *See also Collins*, 911 N.E.2d at 715 (remanding probation

17

condition based on its inclusion of language prohibiting "incidental contact" with minors).

Here, however, Bratcher's probation condition 15 contains no prohibition against "incidental contact." Instead, we find Bratcher's probation condition substantially similar to the probation condition we upheld in *Rexroat v. State*, 966 N.E.2d 165 (Ind. Ct. App. 2012), *trans. denied*. In *Rexroat*, the defendant challenged the probation condition that provided that he "shall have no contact with any person under the age of 18 unless approved by probation. Contact includes face-to-face, telephonic, written, electronic, or any indirect contact via third parties." *Rexroat*, 966 N.E.2d at 167. In *Rexroat*, we pointed out that the probation condition at issue did not explicitly prohibit incidental contact, and we refused to construe the probation condition to include a prohibition against incidental contact with minors, especially since we had already held in *Smith* that the statute upon which the probation condition was based, Indiana Code § 35-38-2-2.4, could not be construed to prohibit a probationer from inadvertent or unintentional contact with minors. *Id.* at 173 (citing *Smith*, 727 N.E.2d at 768). Thus, in *Rexroat*, we held that the probation condition prohibiting contact with minors was neither vague nor overbroad. *Rexroat*, 966 N.E.2d at 173.

Bratcher's probation condition 15 is reasonably related to Bratcher's treatment and to the protection of public safety. Additionally, just as in *Rexroat*, we conclude that Bratcher's probation condition restricting his contact with minors is not vague or overbroad. *See also Smith*, 779 N.E.2d at 117 (upholding the defendant's probation conditions that restricted him from being alone with minors and from participating in

18

activities involving minors where those conditions were reasonably related to the treatment of the defendant and protection of public safety and children); *Stott*, 822 N.E.2d at 179-80 (holding that the defendant's probation condition that restricted his contact with minors was a protective measure for children and would assist the defendant in his rehabilitation). Thus, we conclude that the trial court did not abuse its discretion by imposing probation condition 15.

Bratcher suggests that the language of probation condition 17, which restricts him from "participat[ing] in any activity which involves children under 18 years of age," is unconstitutionally vague or overbroad and contends that it would prohibit him from constitutionally-protected activities, such as attending church services. As Bratcher acknowledges, our Court has already upheld this exact probation condition in *Collins*. In *Collins*, we acknowledged that some of the language, when take in isolation, was vague but explained why the condition was nevertheless acceptable.

> [W]e conclude that [the probation condition at issue] consists of somewhat vague language that might otherwise be inadequate were it not sufficiently clarified elsewhere in the stipulation. While we acknowledge that "any activity which involves children under 18 years of age" would, if standing alone, provide for no predictable standard for behavior, the stipulation also included a list of prohibited activities, including "Boy Scouts, Brownies, 4– H, YMCA, YWCA, or youth sports teams[,]" which are all examples of organized youth activities typically supervised by adults. We conclude the above list sufficiently clarifies that Collins is not to be one of those adults in a supervisory role in the named or similar organizations. So, contrary to [the defendant's] assertion, we conclude that [the probation condition] would not prevent him from attending activities such as church services, but that it would prevent him from teaching Sunday School or supervising a youth group at the church. The language in [the probation condition] is adequate to provide [the defendant] with a predictable standard for his actions in this regard.

*Collins*, 911 N.E.2d at 716. Just as in *Collins*, we conclude that the restricting language of Bratcher's probation condition 17 provides him with a predictable standard and is not impermissibly vague.[5] Thus, Bratcher's challenge to condition 17 is without merit. *See, e.g., id. See also Smith*, 779 N.E.2d at 117 (upholding probation condition specifying that probationer could "not participate in activities that involve children under the age of eighteen, such as Boy Scouts and Girl Scouts" and explaining that this probation condition was a protective measure for children and would assist the probationer in his rehabilitation). As a result, we conclude that the trial court did not abuse its discretion by imposing probation condition 17.

B. *Internet Usage*

Bratcher also challenges the following two sex offender probation conditions that limit or restrict his internet usage:

> 21. You shall not access the Internet or any other on-line service through use of a computer, cell phone, iPod, Xbox, Blackberry, personal digital assistant (PDA), pagers, Palm Pilots, televisions, or any other electronic device at any location (including your place of employment) without prior approval of your probation officer. This includes any Internet service provider, bulletin board system, e-mail system or any other public or private computer network. You shall not possess or use any encryption technique or program.
>
> * * * * *
>
> 23. You are prohibited from accessing or using certain web sites, chat room, or instant messaging programs frequented by children. You are prohibited from deleting, erasing, or tampering with information on your personal computer with intent to conceal an activity prohibited by this condition. *Required as a condition of probation by IC 35-38-2-2.2(4).[6]

---

[5] We note that one member of our panel dissented to the probation condition in *Collins*, concluding that it was "unconstitutionally vague." *See Collins*, 911 N.E.2d at 716 (Crone, J., dissenting).

[6] Ind. Code § 35-38-2-2.2(4) provides that "[a]s a condition of probation for a sex offender . . . the court shall . . . prohibit the sex offender from:

20

(App. 40-41).

Bratcher contends that these probation conditions that restrict his internet usage are overbroad, unduly intrusive, and violate his First Amendment rights because they place an "entire blanket prohibition" on his access to the internet. (Bratcher's Br. 14). Bratcher acknowledges that probation conditions containing a similar internet restriction have been upheld in *McVey*; nevertheless, he asserts that the holding in *McVey* should be "reconsidered" in light of the holdings in *Harris v. State*, 985 N.E.2d 767 (Ind. Ct. App. 2013), *trans. denied*, and *Doe v. Marion County Prosecutor*, 705 F.3d 694 (7th Cir. 2013). (Bratcher's Br. 15). Bratcher suggests that, based on *Doe*, his probation conditions should be "narrowly tailored so as not to overly restrict his First Amendment right to free speech." (Bratcher's Reply Br. 8).

In *Doe*, a certified class of Marion County residents—who were required to register as sex offenders but who had already completed any probation or parole and were not subject to any form of supervised release—filed a suit challenging Indiana Code § 35-42-4-12 as unconstitutional and seeking a permanent injunction against enforcement of the statute. *Doe*, 705 F.3d at 696. The version of this statute in effect at the time the defendant class filed its suit provided that it was a Class A misdemeanor if a sex offender knowingly or intentionally used social networking sites, instant messaging, or chat room programs that the offender knew were accessible by a person less than eighteen years old.

(A) accessing or using certain web sites, chat rooms, or instant messaging programs frequented by children; and

(B) deleting, erasing, or tampering with information on the sex offender's personal computer with intent to conceal an activity prohibited by clause (A).

*See* Ind. Code § 35-42-4-12(e).[7]  Applying an intermediate level of scrutiny to the content

neutral statute, the Seventh Circuit Court held that Indiana Code § 35-42-4-12 was

unconstitutional because it was "not narrowly tailored to serve the state's interest" as it

"broadly prohibit[ed] substantial protected speech rather than specifically targeting the

evil of improper communication to minors."  *Id.* at 695.  The *Doe* Court, however,

cautioned that its opinion should not be interpreted as setting limits on courts when

setting probation conditions:

> Finally, this opinion should not be read to affect district courts' latitude in fashioning terms of supervised release . . . or states from implementing similar solutions.  Our penal system necessarily implicates various constitutional rights, and we review sentences under distinct doctrines. Terms of supervised release, for instance, must be reasonably related to the [sentencing] factors and involve[ ] no greater deprivation of liberty than is reasonably necessary.  Thus, in assessing the need for incapacitation, a court could conceivably limit a defendant's Internet access if full access posed too high a risk of recidivism. The alternative to limited Internet access may be additional time in prison, which is surely more restrictive of speech than a limitation on electronics.  This option is not without limits, but terms of supervised release or parole may offer viable constitutional alternatives to the blanket ban—imposed outside the penal system—in this case.

*Doe*, 705 F.3d at 703 (internal citations and quotation marks omitted).

In *Harris*, a defendant was convicted, under Indiana Code § 35-42-4-12, of a Class

A misdemeanor sex offender internet offense.  *Harris*, 985 N.E.2d at 773-74.  On appeal,

the defendant challenged the constitutionality of the statute, arguing that the ban of his

use of social networking websites impermissibly restricted his First Amendment rights.

*Id.* at 774.  Our Court concluded that the State had "significant interests associated with

---

[7] Indiana Code § 35-42-4-12 at issue in *Doe* was enacted in 2008 by P.L. 119-2008, Sec. 18.  After *Doe*, the statute was subsequently amended by P.L. 247-2013, Sec. 8, effective July 1, 2013, and by P.L. 158-2013, Sec. 448, effective July 1, 2014.

the regulation of sex offender internet usage" but, relying on the analysis and holding in *Doe*, we held that Indiana Code § 35-42-4-12 was not narrowly tailored because it prohibited speech that did not involve harmful interactions with minors. *Id.* at 779-80. Finding that the statute was unconstitutional as applied to the defendant, we reversed his conviction under the statute. *Id.* at 781.

The State argues that the holdings in *Doe* and *Harris* do not apply to this case because Bratcher, as a sex offender on probation, is in "a significantly different position" than the offenders in *Doe* and *Harris*. (State's Br. 17). The State also contends that "the *Doe* Court [has] disavowed attempts such as Bratcher's to use *Doe*'s holding to undermine the validity of probation conditions imposed by a trial court." (State's Br. 16).

A panel of this Court recently agreed with the State's argument about the inapplicability of the holding and analysis of *Doe* to probation conditions that limit internet access to sex offenders on probation. *See Patton*, 990 N.E.2d at 515.[8] In *Patton*, the defendant/sex offender had the exact same probation condition as Bratcher's condition 23. We rejected the defendant's reliance on *Doe* to argue that his First Amendment rights were violated by his probation condition and held that the probation condition was neither overbroad nor vague. Specifically, we explained:

> In this case, Patton is a sex offender on supervised release that places him in a significantly different position than the class of sex offenders in *Doe* and renders the holding in that case inapplicable to him. Time and again, we have observed that conditions of probation may impinge upon a probationer's right to exercise an otherwise constitutionally protected right because "probationers simply do not enjoy the freedoms to which ordinary

---

[8] The opinion in *Patton* was issued just after briefing was completed in this appeal.

citizens are entitled." *Purdy v. State,* 708 N.E.2d 20, 22 (Ind. Ct. App. 1999).

Here, Patton's internet restriction specifically applies to websites that are "frequented by children." I.C. § 35–38–2–2.2(4). In our view, this internet restriction while Patton is on probation is reasonably and directly related to deterring Patton from having contact with children and to protecting the public. *See United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003) (recognizing that "the concomitant dangers of the internet and the need to protect both the public and sex offenders themselves from its potential abuses"). Also, Patton's internet restriction is tailored to him as a sex offender and serves the legitimate needs of law enforcement to monitor and restrict his activities with children for this initial period following his conviction.

On the other hand, we note that the internet restriction as applied to Patton does not prohibit him from searching for employment, gaining additional education, or reading a newspaper. The condition prohibits Patton from accessing only those internet-related activities used by children, which are directly related to his position as a sex offender on probation. *See Harris v. State*, 836 N.E.2d 267, 275 (Ind. Ct. App. 2005) (holding that an internet restriction on a parolee reasonably related to the State's goals of reintegrating the parolee into his community, protecting the general public, and preventing future crime does not unduly infringe upon the parolee's First Amendment rights).

*Patton*, 990 N.E.2d at 515-16.

Just as in *Patton*, we conclude that the holding and analysis of *Doe* is inapplicable to Bratcher's challenge of his probation conditions. Additionally, we conclude that Bratcher's probation conditions 21 and 23 are neither overbroad or vague and that they are reasonably related to attaining the goals of rehabilitation and protecting the public. Indeed, our Court has explained that because "child molesters molest children to whom they have access[,]" conditions of probation that "reduce the potential for access to children are reasonable." *Smith*, 779 N.E.2d at 117 (citing *Carswell*, 721 N.E.2d at 1259). Finally, contrary to Bratcher's argument, neither condition imposes a complete

24

prohibition on his use of the internet or social networking websites. Condition 21 simply requires him to acquire the approval of his probation officer, and condition 23 specifically applies to websites "frequented by children." Accordingly, we conclude that the trial court did not abuse its discretion by imposing probation conditions 21 and 23. *See, e.g.*, *Patton*, 990 N.E.2d at 515-16 (upholding sex offender's probation condition that prohibited him from accessing websites frequented by children); *McVey*, 863 N.E.2d at 450 (holding that the defendant/child molester's probation condition—which restricted his internet access unless he had prior approval of his probation officer—was reasonably related to his reintegration into the community and to protecting the public); *Smith*, 779 N.E.2d at 118 (holding that the trial court did not err by restricting the defendant/child molester's access to computers and online computer services). *See also Harris v. State*, 836 N.E.2d 267, 275 (Ind. Ct. App. 2005) (holding that a parole condition, which restricted a parolee's access to the internet unless he had prior approval of his parole officer, was reasonably related to reintegrating the parolee into his community and protecting the general public and did not violate parolee's First Amendment rights).

Affirmed.

BARNES, J., concur.

CRONE, J., concur in part, dissent in part with opinion

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY SCOTT BRATCHER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 90A02-1301-CR-3 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**CRONE, Judge, concurring in part and dissenting in part**

I concur in the majority's opinion except for the affirmance of probation condition 17. Consistent with my position in *Collins*, I believe that condition is unconstitutionally vague. Therefore, I respectfully dissent as to that issue.