# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 02 2016, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kristen N. Collette,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 2, 2016<br><br>Court of Appeals Case No.<br>02A03-1512-CR-2124<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Wendy W. Davis, Judge<br><br>Trial Court Cause No.<br>02D04-1504-F6-295 |

**Bailey, Judge.**

# Case Summary

Kristen N. Collette ("Collette") pleaded guilty to Neglect of a Dependent, as a Level 6 felony,[1] following the death of her infant son. The trial court sentenced Collette to two years and 183 days imprisonment, with 183 days executed and the rest suspended to probation. On appeal, Collette presents the sole issue of whether the court abused its discretion when it ordered as a special condition of probation that Collette not care for children under the age of sixteen, but may have supervised visitation with her three surviving minor children. We affirm.

# Facts and Procedural History

On December 6, 2014, Collette left her youngest son, two-month-old A.C., at home with a teenage friend. When Collette returned home around 10:30 p.m., she told the teenager to put A.C. to sleep on her bed, a mattress on the floor. That night, Collette and several other adults were hanging out at the house and drinking alcohol. At around 1:30 a.m., Collette moved A.C. from the mattress to a pack-and-play crib. Between 2:30 and 3:30 a.m. he woke up crying, so Collette brought him back to her bed and laid him face down on the mattress between her body and the wall. When Collette woke up around 7:30 a.m. on December 7, 2014, she found A.C. lifeless and cold.

---

[1] Ind. Code § 35-46-1-4 (2014).

[3] The police were called. Collette told the investigating detective that she had about two beers the night before. Around noon, Collette submitted to an alcohol and drug screen, which showed she had a 0.08 blood alcohol content and tested positive for marijuana. Collette initially told the detective that she found A.C. unresponsive in the pack-and-play where she had placed him after feeding and changing him the night before. Collette later admitted that she brought A.C. into her bed in the middle of the night and that she had learned in a class at Parkview Hospital not to sleep with an infant. An autopsy revealed that A.C. had a sunken soft spot, a sign of dehydration, and slight swelling of the brain due to lack of oxygen. A.C.'s diaper was "absolutely engorged," indicating it had not been changed in the night as Collette claimed. (App. 10.)

[4] In December 2014, the Department of Child Services ("DCS") opened an investigation into the family. Collette's three older children, then seven, five, and three years old (collectively, "Children"), were adjudicated Children in Need of Services ("CHINS") and placed in foster or relative care. Collette began having supervised visitation with Children. DCS also provided her with substance abuse, mental health, parenting, and home based services, with the goal of reunifying the family.

[5] On April 8, 2015, the State charged Collette with Neglect of a Dependent, as a Level 6 felony, alleging that she knowingly or intentionally placed A.C. in a situation endangering his life or health. On October 5, 2015, Collette pleaded guilty as charged without the benefit of a plea agreement.

[6] On November 2, 2015, the trial court entered judgment of conviction and held a sentencing hearing. The State presented evidence that prior to A.C.'s death, Collette and Children were living in squalor. All three Children had significant developmental delays and behavioral problems, which Children's foster parents opined stemmed from neglect. Children had been exposed to illegal drug use. During the CHINS case, Collette also continued to use drugs until July 2015. At the conclusion of the hearing, the trial court sentenced Collette to two years and 183 days imprisonment, with 183 days executed and two years suspended to probation. As a special condition of probation, the court ordered that Collette "cannot care for children under the age [of] sixteen. However, she can have supervised visitations [with Children] through SCAN [Stop Child Abuse and Neglect]." (Tr. 97.)

[7] Collette now appeals the court's special probation condition.

# Discussion and Decision

[8] Probation is a criminal sanction wherein a convicted person specifically agrees to accept conditions upon his or her behavior in lieu of imprisonment. *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013), *trans. denied*. A trial court has broad discretion in fashioning the conditions of a defendant's probation. *Id.* (citing *Hevner v. State*, 919 N.E.2d 109, 113 (Ind. 2010)). The court's discretion is limited only by the principle that the conditions imposed must be reasonably related to treatment of the defendant and the protection of public safety. *Id. See also* I.C. § 35-38-2-2.3(a)(15) (providing that the court may impose any term of

probation "reasonably related to the person's rehabilitation"). Our review is limited to determining whether the conditions placed on the defendant are reasonably related to attaining these goals. *Bratcher*, 999 N.E.2d at 873. We will not set aside a trial court's probation conditions unless the court has abused its discretion. *Id.*

[9] The trial court ordered that as a special condition of probation, Collette cannot care for children under sixteen years old, but may have supervised visitation with Children. Collette was convicted of neglect of a dependent after she placed two-month-old A.C. in a situation endangering his life. An autopsy revealed signs that A.C. had been deprived of basic needs before his death. At the sentencing hearing, the State presented evidence that Collette and her surviving children had been living in unsanitary conditions.[2] Children also had been exposed to illegal drug use and suffered from serious developmental delays and behavior problems apparently stemming from neglect.[3] Collette's relative testified that Collette had refused offers of help from family members concerned about the "chaotic" home environment and Collette's lack of parenting skills.

---

[2] Prior to Children's removal, Collette was evicted from a house that was covered in mice feces, the oldest child talked about a pet mouse in her bed, and the kids were covered in bedbug bites.

[3] When placed in foster care, Collette's three year old son's only intelligible words were "liquor store," two obscenities, "yep," and "nope," and he often "toked" on a sucker stick like a marijuana joint. (Exhibit 6.) At seven years old, Collette's oldest child was unable to wipe herself after going to the bathroom or dress herself. She has since been receiving psychological, occupational, and speech therapy to address her behavior issues and developmental delays.

(Tr. 55.) Collette also continued to abuse drugs until July 2015, seven months after Children's removal.

[10] When a person is convicted of neglect of a dependent and there is evidence that she engaged in a pattern of serious child neglect, a special probation term restricting the offender from caring for young children is reasonably related to advancing her rehabilitation and protecting children from future abuse and neglect. *See, e.g.*, *Carswell v. State*, 721 N.E.2d 1255, 1259 (Ind. Ct. App. 1999) (holding that, where defendant was convicted of child molesting, "conditions of probation that reduce the potential for access to children are reasonable"); *Stott v. State*, 822 N.E.2d 176, 180 (Ind. Ct. App. 2005) (holding that probation conditions barring a defendant convicted of child molesting from contacting children under eighteen, including his twelve year old daughter, and being near a school or daycare center were "protective measures for children" that "will assist [him] in his rehabilitation"), *trans. denied*. In light of Collette's conviction and the other evidence of neglect, the trial court did not abuse its discretion by imposing a probation condition temporarily restricting Collette from caring for children under sixteen, but allowing her supervised visitation with Children.

[11] Collette argues, however, that because she has three minor children, the probation condition is "overbroad, tantamount to the termination of [her] parental rights, and unconstitutional as applied to her." (Appellant's Br. 15.)[4]

---

[4] The State argues that Collette's constitutional argument is waived because it was not raised before the trial court. This Court has recently observed that "there appears to be a division of authority among the panels of

Convicted individuals do not enjoy the same constitutional protections as law-abiding citizens, and probation conditions that intrude upon constitutionally-protected rights are not necessarily invalid. *Taylor v. State*, 820 N.E.2d 756, 761 (Ind. Ct. App. 2005), *trans. denied*. Where, as here, a defendant claims that a probation condition is unduly intrusive upon a constitutional right, we evaluate that claim by balancing the following factors: (1) the purpose sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be afforded to probationers; and (3) the legitimate needs of law enforcement. *Bratcher*, 999 N.E.2d at 873.

[12] *Purpose Served by Probation* – In this case, the probation condition helps protect Children from future child abuse and neglect while Collette is on probation. Collette agrees that a "fundamental purpose[]" of probation in this case should be to protect Children, but disagrees that the court's probation condition achieves that purpose. (Appellant's Br. 17.) She argues that where the CHINS court has already intervened to protect Children and is exercising "tremendous oversight," the trial court's probation condition inappropriately "trump[s] the authority of the CHINS court." (Appellant's Br. 17)

this court regarding whether a defendant must object to his probation conditions in order to preserve the issue for appeal." *Meunier-Short v. State*, 52 N.E.3d 927, 936 (Ind. Ct. App. 2016). In *Piercefield v. State*, 877 N.E.2d 1213, 1218 (Ind. Ct. App. 2007), *trans. denied*, a panel of this Court likened an appeal of a probation condition to an appeal of a sentence, which may be reviewed without first presenting the claim to the trial judge. *Id.* The *Piercefield* court held that a defendant who first challenged his probation conditions on appeal did not waive appellate review of the issue. *Id.* Recent decisions from this Court have approved of and adopted this reasoning. *See Meunier-Short*, 52 N.E.3d at 937; *Bratcher*, 999 N.E.2d at 873-74. We, too, find the reasoning persuasive and conclude that Collette has not waived appellate review of her probation condition.

[13] As Collette observes, the purpose of a CHINS adjudication is to protect children. *See In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). But this is not a CHINS case. Here, the trial court's duty was to fashion an appropriate sentence for Collette's neglect of a dependent conviction. Collette was convicted of a Level 6 felony, which carries a fixed term of between six months and two and one-half years, with the advisory sentence being one year. I.C. § 35-50-2-7. She received the maximum sentence (the appropriateness of which she does not appeal), but the court exercised its discretion to suspend two years to probation. Under the circumstances of this case, it also was appropriate for the trial court to be concerned about protecting Children from abuse and neglect during Collette's probation term. That the CHINS court also took substantial steps to protect Children does not render the trial court's probation condition inappropriate.

[14] *The Extent to which the Constitutional Right Should Be Afforded to Probationers –* Collette next argues that the probation condition restricting her to supervised visitation with Children was "tantamount" to terminating her parental rights. (Appellant's Br. 17.) The Fourteenth Amendment to the U.S. Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Although parental rights are of a constitutional dimension, they are not absolute and may be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.*

[15] At the time of sentencing, Children were removed from Collette's care and DCS was providing supervised visitation through the CHINS case with the goal of reunifying the family. DCS Family Case Manager Tiffany King ("FCM King") opined at the hearing that, if the court were to order Collette to participate in supervised visitation for two and a half years, DCS "would have to consider possibly another plan for the children[,]" with potential alternative plans including "terminating parental rights with adoption, possibly a change of custody, or [Collette] voluntarily relinquishing her rights." (Tr. 11.) Based on this testimony, Collette argues that the court's probation condition of two years supervised visitation effectively terminated her rights to Children.

[16] On this point, we agree with the State's observation that "Collette makes too much of [FCM] King's generalized discussion about possible courses of action DCS might contemplate . . . ." (Appellee's Br. 18.) FCM King's testimony did not establish that the court's probation term would compel DCS to petition for termination of her parental rights, much less that the juvenile court would grant termination on DCS's petition.

[17] *Law Enforcement Needs* – Turning to the final factor, Collette argues that the probation condition does not serve the legitimate needs of law enforcement. She contends that probation alone, without a special condition, would have adequately deterred her from further criminal conduct, and, in any case, the CHINS court was in a "far better position" than the trial court to adjudge her ability to care for or visit with Children. (Appellant's Br. 18.) Again, Collette confuses the trial court's role in criminal sentencing with the CHINS court's

efforts to reunify the family. Following a criminal conviction, law enforcement has a legitimate need to protect potential victims from harm during the offender's probation. The probation condition in this case serves that need.

"Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). As such, the trial court could have ordered Collette to serve her two years and 183 days sentence in prison, where she likely would have had limited contact with Children. By placing Collette on probation and allowing her supervised visitation with Children during that time, the trial court put Collette in a better position to pursue reunification with Children than if the court had ordered her entire sentence executed in prison. In sum, the court's probation condition strikes an appropriate balance between Collette's fundamental liberty interest in the parent-child relationship and the court's legitimate need to protect Children from future abuse and neglect during Collette's probation term. Under the circumstances of this case, the court's probation condition was not unduly intrusive upon Collette's constitutional rights.

# Conclusion

The trial court's special probation condition was not an abuse of discretion.

Affirmed.

Riley, J., and Barnes, J., concur.