

FILED

Aug 29 2017, 8:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kristopher L. Weida, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 29, 2017 <br><br> Court of Appeals Case No. <br> 79A02-1608-CR-1760 <br><br> Appeal from the Tippecanoe <br> Superior Court <br><br> The Honorable Randy J. Williams, <br> Judge <br><br> Trial Court Cause No. <br> 79D01-1602-F5-13 |

**Pyle, Judge.**

## Statement of the Case

Kristopher L. Weida ("Weida") appeals his sentence for Level 5 felony incest. He argues that his three-year advisory sentence, with one year executed and two years suspended to probation, is inappropriate. He also challenges two sex

offender probation conditions that restrict his access to the internet, arguing that these conditions are: (1) vague; (2) not reasonably related to his offense; or (3) unduly intrusive. Concluding that Weida has failed to meet his burden of showing that his sentence is inappropriate and that the trial court did not abuse its discretion by imposing the challenged probation conditions, we affirm his sentence and probation conditions.

We affirm.

## Issues

1. Whether Weida's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

2. Whether the trial court abused its discretion by imposing sex offender probation conditions that restrict Weida's access to the internet.

## Facts

On March 28, 2015, thirty-four-year-old Weida had sexual intercourse with his sixteen-year-old niece, K.M. ("Niece"), who was the daughter of his sister, Kendra Hughes ("Hughes"). Thereafter, the State charged Weida with Level 5 felony incest. In May 2016, Weida pled guilty as charged without a written plea agreement.[1] The trial court accepted his guilty plea and entered judgment of conviction.

---

[1] We note that INDIANA CODE § 35-35-3-3(a) requires that a plea agreement on a felony charge be made "in writing" and "before the defendant enters a plea of guilty." We have explained that "'[t]he purpose behind [INDIANA CODE § 35-35-3-3] is to [e]nsure that a defendant does not base his guilty plea upon certain promises made by the prosecutor where the judge has in fact not accepted the [S]tate's recommendation.'" *Gil v. State*, 988 N.E.2d 1231, 1234 n.2 (Ind. Ct. App. 2013) (quoting *Davis v. State*, 418 N.E.2d 256, 260 (Ind. Ct. App. 1981)). However, we also explained that "failure to

During Weida's sentencing hearing, the State introduced State's Exhibit 1, which was a supplemental narrative report from the Tippecanoe County Sheriff's Department. This report was an attachment to the State's sentencing memorandum, which the State had filed with the trial court.[2] State's Exhibit 1 contained a detailed recitation of facts from Niece regarding Weida's actions leading up to and including his act of having sex with her. For example, as Weida smoked a cigarette with Niece in the bedroom, he asked her if she had any photographs of herself, took her phone and looked at her hidden photographs, and called her a "naughty girl" for "showing" him the photographs. (State's Ex. 1 at 2).[3] Exhibit 1 also revealed that Niece had previously been molested by a non-blood relative and that she had discussed this with Weida on the day he had sex with her; specifically, she told him that she had looked at an incest-related website to try and understand why the relative would have done that to her. Weida asked Niece if the website had information relating to uncles and nieces. They then "reviewed the website[,]"

---

reduce an agreement to writing need not itself be deemed a sufficient ground for rejection" of a defendant's guilty plea. *Gil*, 988 N.E.2d at 1234 n.2 (quoting *Centers v. State*, 501 N.E.2d 415, 417-18 (Ind. 1986)). Even so, it is important to observe statutory requirements for plea agreements.

[2] The State's sentencing memorandum and the report were submitted as confidential documents under Indiana Administrative Rule 9(G)(5). Weida did not include a copy of the State's sentencing memorandum in his Appellant's Appendix.

[3] As noted above, the State filed Exhibit 1 as a confidential exhibit pursuant to Administrative Rule 9, and it is, therefore, excluded from public access. However, in this case, the information contained in Exhibit 1 is "essential to the resolution" of Weida's appellate claims. *See* Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

and Weida asked Niece if she "had ever thought of 'doing stuff' with a family member, or her mother." (State's Ex. 1 at 3).

[5] During Weida's sentencing allocution, he told the trial court that he had started counseling, which he started after Niece had reported him to the police. He admitted that he "knew [Niece] was sixteen at the time" he had sex with her and "knew it was wrong." (Tr. 37). However, Weida attempted to mitigate or excuse his actions by shifting the blame to Niece. Weida stated that he believed that Niece had seduced him and that she had wanted to have sex with him, and he stated that Niece had already had a sexual relationship with someone else. Weida's counsel also pointed to the fact that Niece was "sixteen, [the] age of consent," and he asked that the trial court impose a sentence that was fully suspended to probation. (Tr. 41).

[6] Also during the sentencing hearing, the parties discussed the fact that, aside from Weida having had sex with Niece, he had also had a sexual relationship with his own sister, Hughes, for multiple years. Weida admitted that he had had an inappropriate sexual relationship with his sister, but he claimed that his sister was the one who had initiated it when he was five years old and she was seven years old. He stated that the sexual relationship with his sister continued "for many years" into their "late teens, and early twenties." (Tr. 28). He stated that he had first thought that having sex with his sister was normal, but he had later realized, when he was a teenager, that it was wrong. Weida also stated that even after realizing that it was wrong to have sex with his sister, he, nevertheless, continued to do so.

[7] However, State's Exhibit 1 contained information from the sheriff's interview with Weida's sister, Hughes, who stated that Weida had initiated a sexual relationship with her. She also stated that Weida had engaged in sexual intercourse with her ten to twenty times between 2002 and 2008, which would have been when Weida was twenty-two to twenty-eight years old. Hughes also alleged that Weida had sexually assaulted Hughes' younger daughter when that daughter was three years old.

[8] Additionally, Exhibit 1 contained information from Weida's police interview, during which he admitted to police that he had had sex with Niece but stated that he had put a condom on before doing so and stated that he had thought that she was of the "legal age of consent." (State's Ex. 1 at 14). He also admitted that he smoked cigarettes with her, showed her pornographic images on his cell phone, rubbed Niece's vagina with his finger, and kissed and licked her vagina. Weida also told the police that Niece's age and his prior sexual relationship with his own sister "justified" his actions. (State's Ex. 1 at 10).

[9] Before pronouncing Weida's sentence, the trial court addressed Weida's arguments as follows:

> I knew it was wrong. I wish it hadn't happened. I'm sorry it happened. But you never told me why you wish it hadn't happened or why you were sorry about it. Everything I've heard is, is essentially been a, this [ha]s happened to me in the past, which . . . I recognize that. But, . . . never once did I hear you say anything about [the] [e]ffect that this would have on the victim and her future life. The issue was raised, talking about breaking the cycle, what you have done, what you have done is

perpetuate the cycle by bringing another individual into this sorted [sic] family relationship. . . . [T]his whole thing about her having sex with several other people, so even if that is something in which you were aware, prior to this act, I don't understand the relevance.

My recollection from the latest, the report that was filed is that there was a condom used. Which would also suggest that there was that period of time in which you made the conscious decision to have sex with your sixteen[-]year[-]old niece, that you had to step back, open up the packet, remove a condom and put it on yourself. So there was that period of time in which you had the opportunity to step back and think, this isn't a good thing for me to be doing. But you chose not to. And that you recognize at some point that it was not, with your sister, it was not the right thing to do or the normal thing to do, that would have been in your teens, it was clearly, clearly known to you that this was the wrong thing to do.

* * * * *

So I had sex with my sixteen[-]year[-]old niece. Big deal, we're going to talk it out as a family and then she's, everyone's going to be fine. That's not how it works. I recognize that you plead[ed] guilty because there's no question that you had sex with your sixteen[-]year[-]old niece. But I question your taking responsibility for the act. Your remorse, again, is centered on you and not directed at all to that of the victim. When asked, you stated whether or not you thought that you were seduced, you said, I did have that feeling. Nothing has been said that that feeling has changed.

(Tr. 47-48).

[10]    The trial court found the following mitigating circumstances: (1) Weida had pled guilty; (2) he had a lack of criminal convictions; (3) he was current with his

child support; (4) he had mental health issues; (5) he had a work history; and (6) he had support from his family. It also determined that the following were aggravating circumstances: (1) his failure to take responsibility for his actions; (2) his position of trust with the victim; and (3) his history of substance abuse. The trial court determined that "the aggravating factors outweigh[ed] the mitigating factors" and imposed an advisory three (3) year sentence, with one (1) year executed in the Indiana Department of Correction and two (2) years suspended to probation. (App. Vol. 2 at 41). The trial court also recommended that Weida have a mental health evaluation and engage in therapy while in prison.

[11] The trial court also imposed the general conditions of probation and "special probation conditions" for adult sex offenders. (App. Vol. 2 at 47-50). These special conditions included the following two conditions, which Weida challenges in this appeal:

> 8. You are prohibited from accessing or using certain web sites, chat rooms, or instant messaging programs frequented by children. You are prohibited from deleting, erasing, or tampering with information on your personal computer with intent to conceal an activity prohibited by this condition. **\*Required as a condition of probation by IC 35-38-2-2.2(4).**
>
> * * * * *
>
> 26. You shall not access the Internet or any other on-line service through use of a computer, cell phone, iPod, Xbox, Blackberry, personal digital assistant (PDA), pagers, Palm Pilots, televisions, or any other electronic device at any location (including your place of employment) without prior approval of your probation

officer. This includes any Internet service provider, bulletin board system, e-mail system or any other public or private computer network. **You shall not possess or use any encryption technique or program.**

(App. Vol. 2 at 48, 50) (emphasis in original). The trial court recognized that Weida, who had three children, would want to "contact [his] own children[.]" (Tr. 51). When discussing probation condition 8, the trial court specifically informed Weida that he "would be able to use a networking site or the instant messaging for [his] children." (Tr. 51). Additionally, when the trial court discussed condition 26, it informed Weida that he "c[ould] have access for the purpose of contact with [his] children at any time." (Tr. 51). Weida now appeals his sentence and these two probation conditions.

# Decision

[12] On appeal, Weida contends that: (1) his sentence is inappropriate; and (2) the trial court abused its discretion when imposing probation conditions that restricted his access to the internet. We will review each argument in turn.

## 1. Inappropriate Sentence

[13] Weida contends that the trial court's imposition of an advisory three-year sentence, with one year executed and two years suspended to probation, is inappropriate for his Level 5 felony incest conviction. He suggests that we should revise his sentence to either "a sentence below the advisory" or "an advisory sentence without time executed in prison." (Weida's Br. 8).

[14] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[15] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, Weida pled guilty to Level 5 felony incest. A Level 5 felony has a range of one (1) to six (6) years with an advisory sentence of three (3) years. I.C. § 35-50-2-6. The trial court imposed an advisory three (3) year sentence, with one (1) year executed and two (2) years suspended to probation. The trial court also

recommended that Weida have a mental health evaluation and engage in therapy while in the Indiana Department of Correction.

[16] The nature of Weida's offense involved him having sex with his sixteen-year-old niece, who, Weida knew, had apparently already been previously molested by another family member. Weida received only one year of executed time for this sexual act against his own relative with whom he had a position of trust. Because Weida pled guilty, his factual basis contains only basic, elemental facts of his incest offense. However, State's Exhibit 1, which was introduced during the sentencing hearing, reveals the sordid details of Weida's offense against Niece and the grooming acts that led to Weida's act of sexual intercourse with her. This exhibit also reveals that Weida did more than just have sex with Niece. Indeed, Weida admitted to police that he showed Niece pornographic photographs on his phone, rubbed Niece's vagina with his finger, and kissed and licked her vagina. Furthermore, as the trial court pointed out during the sentencing hearing, Weida had the "opportunity to step back" and stop himself from this act when he stopped to put on a condom, but he "chose not to" and proceeded to have sex with his sixteen-year-old niece. (Tr. 48).

[17] Weida attempts to minimize the nature of his offense by arguing that his "offense is less egregious than a typical incest offender" because he had sex with Niece "on only one occasion" and did not use violence or force against her. (Weida's Br. 8). We do not, however, find the nature of Weida's offense to be less egregious. Weida's one act of sexual intercourse with Niece is reflected in the fact that the State charged him with only one count of incest.

Furthermore, "[a]lthough incest is not exclusively a crime against children, it is very often committed against children or other particularly vulnerable victims." *Pavan v. State*, 64 N.E.3d 231, 235 (Ind. Ct. App. 2016). Nor do we find his argument regarding a lack of force to be compelling. *See Norton v. State*, 106 Ind. 163, 6 N.E. 126, 130 (1886) (explaining that under the incest statute, if a relative has sexual intercourse with another relative that he knows is related, "he is guilty of incest[,] and [t]his is so . . . whether such intercourse is had by force or without force"); *Pavan*, 64 N.E.3d at 234 (noting that "the incest statute contains no element of force").

[18] In support of Weida's argument that his sentence is inappropriate in regard to his character, Weida points to the fact that he pled guilty, had no prior criminal convictions, sought counseling on his own, was current on his child support, was employed, and had letters of support from family and friends. The trial court considered these factors as mitigating circumstances and took them under consideration when imposing the sentence of one year executed with two years suspended to probation. The trial court, however, determined that the aggravating factors regarding Weida's character outweighed these mitigating factors. Notably, Weida failed to take full responsibility for his actions and, instead, tried to shift the blame to Niece by stating that she had seduced him and had already been sexually active. He also violated a position of trust with his own niece, whom he knew had already been victimized by another family member. Furthermore, his character is poorly reflected by his willingness to

engage in an extended sexual relationship with his own sister despite his claim that he knew it was wrong.

[19] Here, the trial court did not impose the maximum sentence for Weida's incest conviction. Instead, it imposed an advisory three-year sentence with only one year executed and two years suspended to probation for Weida's act of having sexual intercourse with his niece. Weida has not persuaded us that this sentence is inappropriate. Therefore, we affirm the trial court's sentence.

## 2. Probation Conditions

[20] Weida argues that the trial court abused its discretion by imposing sex offender probation conditions relating to restrictions on his internet usage. Specifically, he contends that: (1) probation condition 8 is "unconstitutionally vague[;]" and (2) probation conditions 8 and 26 are: (a) "not reasonably related to [his] offense or rehabilitation" and (b) "unduly intrusive" on his constitutional rights because they impose a "blanket Internet ban[.]" (Weida's Br. 9, 13).[4] Weida asks that we order the trial court to vacate these two probation conditions.[5]

---

[4] Weida also argues that conditions 8 and 26 are "unconstitutional as applied to him." (Weida's Br. 9). We note that an "as applied" challenge generally applies only to a challenge to statutes or regulations. *See Bratcher v. State*, 999 N.E.2d 864, 873 n.3 (Ind. Ct. App. 2013), *trans. denied. See also Harris v. State*, 985 N.E.2d 767, 774 n.1 (Ind. Ct. App. 2013) ("An 'as applied' challenge asks a reviewing court to "declare the challenged statute or regulation unconstitutional on the facts of the particular case."), *trans. denied.* Condition 8 is based on a statute that requires the imposition of certain restrictions for sex offenders. *See* IND. CODE § 35-38-2-2.2. Weida, however, does not challenge the statute underlying that probation condition.

[5] The State argues that Weida has waived any challenge to his probation conditions because he did not object to them at sentencing and because he signed the special probation condition form, agreeing to comply with the conditions. For the reasons set out in *Bratcher*, we conclude that Weida has not waived appellate review of his probation conditions. *See Bratcher*, 999 N.E.2d at 873-74. Accordingly, we will review Weida's challenge to his two probation conditions.

[21] We have set forth our standard of review for reviewing a trial court's imposition of probation conditions as follows:

> Probation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment. Trial courts have broad discretion in determining the appropriate conditions of a defendant's probation. This discretion is limited only by the principle that the conditions imposed must be reasonably related to the treatment of the defendant and the protection of public safety. Thus, our review is essentially limited to determine whether the conditions placed on the defendant are reasonably related to attaining these goals. We will not set aside a trial court's probation terms unless it has abused its discretion.
>
> Convicted individuals do not enjoy the same constitutional protections as law-abiding citizens[,] and probation conditions that intrude upon constitutionally protected rights are not necessarily invalid. Where, as here, a defendant contends that a probation condition is unduly intrusive upon a constitutional right, the following three factors must be balanced: (1) the purpose sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be afforded to probationers; and (3) the legitimate needs of law enforcement.

*Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013) (internal citations and quotations omitted), *trans. denied*.

[22] We will first address Weida's argument that probation condition 8 is unconstitutionally vague.[6] This challenged condition provides as follows:

---

[6] He does not make a vagueness argument in regard to condition 26.

8. You are prohibited from accessing or using certain web sites, chat rooms, or instant messaging programs *frequented by children*. You are prohibited from deleting, erasing, or tampering with information on your personal computer with intent to conceal an activity prohibited by this condition. **\*Required as a condition of probation by IC 35-38-2-2.2(4).**

(App. Vol. 2 at 48) (italics emphasis added; bold emphasis in original). Weida contends that the phrase "frequented by children" in this probation condition is vague because the condition does "not include a list of examples of web sites frequented by children to clarify the condition and create a predicable [sic] standard for Weida's Internet use." (Weida's Br. 15).

[23] "[The language in a probation condition must be such that it describes with 'particularity and clarity' the misconduct that will result in penal consequences." *Patton v. State*, 990 N.E.2d 511, 516 (Ind. Ct. App. 2013) (quoting *Hunter v. State*, 883 N.E.2d 1161, 1163-64 (Ind. 2008)). A probation condition "need only inform the individual of the generally proscribed conduct" and "[i]t need not list, with itemized exactitude, every item of conduct that is prohibited." *Id.*

[24] We have previously reviewed this exact probation condition for vagueness and held that it was not unconstitutionally vague. *See Patton*, 990 N.E.2d at 516-17; *Bratcher*, 999 N.E.2d at 879. Specifically, the *Patton* Court, when addressing the defendant's vagueness argument, explained as follows:

In our view, the language of the condition prohibiting [the defendant] from "accessing or using certain websites, chat rooms,

or instant messaging programs frequented by children" adequately informs him that he is prohibited from internet activity that would allow him to view communications between children and to communicate with them. Restricting a sex offender's access to the internet that "offers unlimited access to people, including children" serves to protect the public and to prevent future criminal activity. *See Harris*, 836 N.E.2d at 275 (finding a complete ban on internet use without the prior approval of the parole agent to not be vague).

* * * * *

Because the condition of probation in this case is specifically tailored to only those internet activities that are "frequented by children," [the defendant] is provided with adequate notice that he would be in violation of his probation by accessing websites that are designed and known to be used by children for communication. Also, in light of the vast nature of the internet, it would be virtually impossible for the legislature to list each and every website, chat room, or instant messaging program that permits communication by and among children. In short, because the language of the probation condition afforded [the defendant] a predictable standard and notice with regard to his internet usage during his probationary period, his constitutional claims fail, and we decline to set aside the condition of probation that relates to his internet usage.

*Patton*, 990 N.E.2d at 516-17. Based on our prior holdings that the language contained in probation condition 8 is not vague, we conclude that the trial court did not abuse its discretion by imposing this probation condition. *See, e.g.*, *id.*; *Bratcher*, 999 N.E.2d at 879.

[25] Next, we address Weida's arguments that probation condition 8 (which limits his access to internet sites "frequented by children") and condition 26 (which

limits his access on the internet "without prior approval of [his] probation officer") are: (a) "not reasonably related to [his] offense or rehabilitation" and (b) are "unduly intrusive" on his constitutional rights because they impose a "blanket Internet ban[.]" (Weida's Br. 9, 13).

[26] Weida acknowledges that he is now classified as a sex offender and that probation conditions "identical" to his conditions 8 and 26 were already reviewed in *Patton* and *Bratcher* and determined to be reasonably related to rehabilitation for sex offenders. (Weida's Br. 11). Specifically, in *Patton*, our Court held that the probation condition that restricts access to websites "frequented by children" was "reasonably and directly related to deterring [the defendant] from having contact with children and to protecting the public." *Patton*, 990 N.E.2d at 516. Additionally, in *Bratcher*, we held that the same two probation conditions that Weida now challenges were "reasonably related to attaining the goals of rehabilitation and protecting the public." *Bratcher*, 999 N.E.2d at 879. We also explained that probation conditions that restrict internet access and "reduce the potential for access to children" were "reasonable" because "child molesters molest children to whom they have access[.]" *Id.* (internal quotation marks and citations omitted).

[27] Weida, however, contends the holdings of these two cases are "inapplicable" to him and that his two probation conditions are not reasonably related to his incest offense or rehabilitation because he "did not use the Internet to perpetrate his offense" and because Niece "was over the age of consent." (Weida's Br. 10, 11).

First, we reject Weida's argument that his probation conditions were not reasonably related because he did not use the internet to commit his offense. State's Exhibit 1, which was introduced during the sentencing hearing, reveals that Weida used the internet as part of the grooming process to get Niece to have sex with him. Specifically, the exhibit reveals that they looked at an incest-related website and that he used his cell phone to show her pornographic photographs.

Moreover, we have previously rejected an argument similar to Weida's in *McVey v. State*, 863 N.E.2d 434 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. In that case, the defendant argued that his probation condition, which prohibited internet access "without prior approval of [a] probation officer[,]" was not reasonably related to his rehabilitation because "his offense [of child molesting] did not involve any sort of computer or online media[.]" *McVey*, 863 N.E.2d at 450. Although the defendant in *McVey* had, indeed, not used the internet when molesting the child victim, we rejected the defendant's argument and explained as follows:

> We find that the limitation on [the defendant's] access to the internet is reasonably related to his successful reintegration into the community. Clearly, accessing prohibited material is easily accomplished with a computer, and for that reason computer access would provide a temptation of such a magnitude that exposure to it would not be in the best interest of [the defendant's] rehabilitation. This is so because the internet defies boundaries and offers unlimited access to people, including children. This access is often subtle to children and undetected by most parents. Restricting a child molester's access to this

communication medium, therefore, serves to protect the public and to prevent future criminal activity.

Moreover, we note that the condition in question does not completely prohibit [the defendant] from using the internet, which has increasingly become a vital means of communication in the business world. Instead, it simply requires him to receive prior approval from his probation officer to use the internet. Thus, the trial court did not err in restricting [the defendant's] access to computers and online computer services.

*Id.* (internal citations omitted).

[30] Additionally, we reject Weida's argument that his probation conditions that limit his internet access are not reasonably related to his offense or rehabilitation because Niece was sixteen years old at the time of his offense. It appears that Weida is arguing that probation condition 8, which prohibits his access to websites frequented by children, is unrelated to his incest offense because Niece was of the age of consent and arguably not a child. However, as the State points out, Niece was "still legally a child[.]" (State's Br. 15) (citing IND. CODE § 35-47-10-3 (defining a "child" as "a person who is less than eighteen (18) years of age"). Furthermore, State's Exhibit 1 contains allegations that Weida molested another niece when she was three years old. Thus, we conclude that Weida's probation conditions were "reasonably related to attaining the goals of rehabilitation and protecting the public." *See Bratcher*, 999 N.E.2d at 879; *see also Patton*, 990 N.E.2d at 516.

[31] Lastly, we turn to Weida's contention that his probation conditions are "unduly intrusive upon [his] right to free expression and right to receive information and

ideas" because the conditions impose a "blanket Internet ban[.]" (Weida's Br. 10, 13).

[32]     Again, we have already reviewed and rejected the argument that these two probation conditions impose a complete ban on internet access. In *Bratcher*, we explained that "neither condition imposes a complete prohibition on [the] use of the internet or social networking websites" because "[c]ondition [26] simply requires him to acquire the approval of his probation officer, and condition [8] specifically applies to websites 'frequented by children.'" *Bratcher*, 999 N.E.2d at 879. Furthermore, when imposing Weida's challenged probation conditions, the trial court clarified that Weida would have internet access to communicate with his own children. When discussing probation condition 8, the trial court specifically informed Weida that he "would be able to use a networking site or the instant messaging for [his] children." (Tr. 51). Additionally, when the trial court discussed condition 26, it informed Weida that he "c[ould] have access for the purpose of contact with [his] children at any time." (Tr. 51).

[33]     Weida acknowledges our holding in *Bratcher* but argues that it "overlooks the real world effect of these probation conditions" where people use the internet everyday and carry cell phones that have internet access contained on them. (Weida's Br. 12). He contends that the probation conditions are unduly intrusive because it "is not a 'simple' matter" to seek permission from a probation officer when he wishes to use the internet. (Weida's Br. 12). He also argues that this Court's opinion in *Waters v. State*, 65 N.E.3d 613 (Ind. Ct. App.

2016) supports his argument that his probation conditions were unduly intrusive.[7]

[34]   Initially, we reject Weida's argument that a lack of convenience in contacting his probation officer renders his probations conditions unduly intrusive. "Convicted individuals do not enjoy the same constitutional protections as law-abiding citizens[,] and probation conditions that intrude upon constitutionally protected rights are not necessarily invalid." *Bratcher*, 999 N.E.2d at 873 (citations and internal quotation marks omitted).

[35]   Furthermore, we conclude that this Court's opinion in *Waters* is applicable in this specific case. In *Waters v. State*, 65 N.E.3d 613 (Ind. Ct. App. 2016), another panel of our Court addressed whether a challenged probation condition was overbroad, and in doing so, discussed the pervasiveness of internet usage.[8] In *Waters*, the defendant—who was convicted of criminal deviate conduct, battery, and strangulation against a woman—argued that his probation condition 26, which restricted access to the internet without prior approval of his probation officer, was overbroad in its application.[9] When addressing his argument, the *Waters* Court noted that "[t]he internet has become increasingly pervasive in our daily lives; we use it to pay bills, order food, get directions, communicate with friends and colleagues, and file taxes, among other things."

---

[7] Weida filed a Notice of Additional Authorities and cited to *Waters*.

[8] The panel in *Waters* included Judge Baker, who is also a panel member in this case.

[9] Probation condition 26 in *Waters* was identical to Weida's condition 26.

*Waters*, 65 N.E.3d at 619. When analyzing the challenge to the probation condition as overbroad, the *Waters* Court relied on caselaw from other state courts that "ha[d] recognized that a sex offender who has *no history of illegal internet use* and did *not use the internet as an instrument in his crime* should not have a total ban on his internet access but rather a narrowly tailored restriction." *Waters*, 65 N.E.3d at 619 (emphasis added). The *Waters* Court ultimately held that Waters' probation condition was "overly broad in its restrictions" because "there [wa]s no evidence in the record to show that Waters [had] used the internet to commit his attack on [the woman victim] or that he ha[d] a history of illegal internet use" and because the "trial court [had] noted that Water ha[d] 'issues with respect to women,' not issues with the internet." *Id.* 620. The *Waters* Court explained that, under the specific facts of Waters' case and given the various technological tools that could be used by the trial court to limit his access to certain websites, the trial court "should impose a narrower internet restriction that [wa]s more in line with Waters' conviction and 'issues with women.'" *Id.*

[36] Unlike the defendant in *Waters*, Weida, who committed his crime of incest against a sixteen-year-old victim, has not raised an argument that his probation conditions were overbroad. More importantly, the record here does contain evidence that Weida used the internet as part of the grooming process before he had sex with his niece. Accordingly, we conclude that, given the facts and circumstances of this case, the trial court did not abuse its discretion when imposing probation conditions 8 and 26.

[37] Affirmed.[10]

Baker, J., concurs in part, dissents in part with opinion.

Mathias, J., concurs.

---

[10] Weida also suggests that his probation conditions "infringe upon [his] First Amendment rights" and cites to *Doe v. Marion County Prosecutor*, 705 F.3d 694 (7th Cir. 2013). (Weida's Br. 10). Based on our explanation set forth in *Bratcher*, we reject Weida's argument and continue to conclude that that the holding and analysis of *Doe* is inapplicable to probation conditions that limit internet access to sex offenders. *See Bratcher*, 999 N.E.2d at 878 (citing and quoting *Patton*, 990 N.E.2d at 515-16) (discussing the difference between sex offenders on supervised release who are challenging a probation condition and sex offenders who had already completed probation, were not subject to any form of supervised release, and were challenging the constitutionality of a statute under which they were convicted).

We further note that the United States Supreme Court recently invalidated a North Carolina statute that "ma[d]e it a felony for a registered sex offender 'to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages.'" *Packingham v. North Carolina*, 137 S.Ct. 1730, 1733 (2017). Similar to *Doe*, the *Packingham* Court held that the statute at issue was overbroad and not narrowly tailored to serve a significant governmental interest. *See id.* at 1737. Like our conclusion regarding the inapplicability of *Doe*, we conclude that the holding and analysis of *Packingham* is not applicable to Weida, who is a sex offender subject to supervised release challenging a probation condition and not challenging the probation condition as overbroad.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kristopher L. Weida,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>79A02-1608-CR-1760 |

**Baker, Judge, dissenting in part.**

[38]   I fully concur with the majority with respect to the appropriateness of Weida's sentence and probation condition 8.  I respectfully part ways with my colleagues, however, with respect to condition 26.

[39]   I believe that condition 26 is unduly intrusive and unnecessarily restrictive.  In today's day and age, to require an individual to seek prior approval for every single use of the Internet is a tall order indeed, especially in a case where the use of the Internet was not a significant part of the underlying crime.  I echo the *Waters* Court's observation regarding the pervasiveness of the Internet in our

daily lives, as well as its observation that "[m]odern technology affords the court the tools to limit [the defendant's] access to certain dating websites and phone applications, as well as websites with sexually explicit materials—restrictions that are reasonably related to his rehabilitation and the protection of public safety." 65 N.E.3d at 620. In my view, the trial court could and should have imposed a narrower, more specifically tailored Internet restriction as a condition of Weida's probation.

[40] In all other respects, I fully concur with the majority opinion.