

FILED

Jan 30 2015, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Adam Anthony Howe<br>Pendleton, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Justin F. Roebel<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Adam Anthony Howe,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Respondent.* | January 30, 2015<br><br>Court of Appeals Cause No.<br>12A02-1405-CR-320<br><br>Appeal from the Clinton Circuit<br>Court<br><br>The Honorable Bradley K. Mohler,<br>Judge<br><br>Trial Court Cause No.<br>12C01-0501-FA-8 |

**Brown, Judge.**

[1] Adam Anthony Howe appeals the trial court's order denying his petition to modify a condition of his probation. Howe raises two issues which we revise and restate as whether the court abused its discretion in denying his petition. We affirm.

### Facts and Procedural History

[2] In January 2005, Howe entered the home of his former wife and M., their three-year-old daughter where M.'s grandmother was also present. Howe had a physical altercation with M.'s mother, they struggled over Howe's gun, and at some point M.'s grandmother was struck by a bullet. M. observed the altercation. In June 2006, Howe pled guilty to the offenses of battery by means of a deadly weapon as a class C felony, unlawful possession of a firearm by a serious violent felon as a class B felony, invasion of privacy as a class A misdemeanor, aggravated battery as a class B felony, and residential entry as a class D felony. In July 2006, the court sentenced Howe to eight years for battery by means of a deadly weapon, twenty years with ten years suspended for unlawful possession of a firearm, stating "and the defendant is placed on probation for a period of ten (10) years," one year for invasion of privacy, twenty years for aggravated battery, and three years for residential entry. Appellant's Appendix at 8. The chronological case summary entry setting forth Howe's sentence also provides: "As a special condition of probation, the defendant shall not have any contact, direct or indirect, with the victims." *Id.*

[3] On October 8, 2013, Howe filed a Petition for Modification of an Order of Protection. In the petition, he indicated that he had sent a birthday card to M.,

that in response he received a letter dated January 8, 2008, from the Clinton Circuit Court Probation Department, and that he received an additional letter dated February 22, 2013, from the Probation Department, and he attached the letters to his Petition. The January 8, 2008 letter stated that, "[p]er court order, you are not allowed any direct or indirect contact with the victims in this case," and the February 22, 2013 letter reiterated that Howe was prohibited from having any contact with the victims and stated that "it was the Court's opinion that any children would be included in the no contact order. This stipulation will remain in effect until probation ends. You may request a modification to the terms; however; the Court may or may not grant it." *Id.* at 23, 25. In his petition, Howe argued in part that the crime was not against M., that she was not a victim, and that he believes he has a right to care for his minor child while he is in prison and "is taking the necessary steps to protect his parental rights, as a father, wanting to establish a relationship with his 12-year old daughter." *Id.* at 15. Howe requested that the court hold a hearing on his petition and "modify an order for protection to specify arrangement for Parenting time of a minor child." *Id.* at 16.

[4] On March 17, 2014, the court held a hearing on Howe's petition at which he appeared by telephone. The court elicited testimony from Howe that his earliest possible release date was 2023, that he wanted to be able to correspond with M. and have her visit him, and that M. was twelve years old. When asked by the prosecutor how he knew M. wanted to see him, Howe stated "through her brother . . . , my son" and that his son told him that M. had "been crying

and wanting to see" him and that "there's been a conflict between her and her mother because she's wanting to . . . have contact with me." Transcript at 5. Howe was informed that the court could not order visitation, that "all that the judge through the criminal case can do is indicate whether or not there's a No Contact," and that "[w]hether or not the mother would choose . . . to authorize visits or facilitate in those, that's really a matter through the divorce court that as judge in this case . . . [the court does not] have the authority to order." *Id.* at 9. Howe stated that he understood and the court took the matter under advisement.

[5] On March 26, 2014, the State filed a response to Howe's petition stating that it had consulted with M.'s mother regarding Howe's request, that "[s]he is adamantly opposed [to] the request," that "[t]he child was a witness to the defendant's shooting spree," that M. "is a minor in the sole custody" of M.'s mother, and that Howe "has no business having contact with the child." Appellant's Appendix at 28. On April 4, 2014, the State filed a second response attaching a statement by M.'s mother, which described the events in January of 2005 leading to Howe's incarceration, including that she was in the bathroom and had the door closed, Howe forced the bathroom door open, she immediately grabbed the gun to point it down, they ended up on the floor, Howe hit her with the gun "upside the head," Howe heard sirens and started to go down the stairs and "was releasing bullets on my stairway," and that M. "watched her grandmother get shot in the face." *Id.* at 32-33. M.'s mother further stated that M. "struggles being afraid of going anywhere in the dark by

herself and also struggles in school" and that M.'s mother "and the school deal with [M.'s] behaviors every day and alot of it is from her past." *Id.* at 33-34. She also stated that Howe "has been in and out of prison all his life and is a very dangerous man," that she definitely did not want her daughter to go to a prison to see him, that there is a no contact order after he is released in 2023 for ten years, and that M. "is only 12 yrs old and does not need to be anywhere near a prison." *Id.* at 34. On April 7, 2014, the court issued an order denying Howe's petition.

## *Discussion*

[6] The issue is whether the trial court abused its discretion in denying Howe's petition. Howe, *pro se*, asserts that, "[i]n the case at hand, [M.] was not a victim, Howe did not attempt whatsoever to find any of the children, he was focused on just the adults" and that, "[u]nfortunately, [M.] was in the room with her Grandmother when Howe attacked and shot [M.'s grandmother]." Appellant's Brief at 9. He also asserts that the court abused its discretion in failing to properly consider the best interest of M. and failing to question M. to determine her desires.

[7] The State maintains that the court did not abuse its discretion in denying Howe's request to modify the conditions of his probation to allow contact with M, that Howe admits that his daughter saw the acts of violence that led to the charges in this case and that the court was presented with a recommendation from M.'s mother which stated that the experience caused M. continuing stress, fear of the dark, and behavior problems at school. The State also observes that

Ind. Code § 35-38-2-2.3 provides authority for criminal courts to protect victims of crimes by ordering as a condition of probation that the person refrain from any direct or indirect contact with an individual, that any issue regarding a civil protection order or parenting time rights are outside the scope of this case, and that Howe has not shown that the court abused its discretion in denying his petition.

[8] Trial courts have broad discretion in determining the appropriate conditions of a defendant's probation. *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013) (citation omitted), *trans. denied*. This discretion is limited only by the principle that the conditions imposed must be reasonably related to the treatment of the defendant and the protection of public safety. *Id.* (citation omitted). We will not set aside a trial court's probation terms unless it has abused its discretion. *Id.* (citation omitted). Ind. Code § 35-38-2-1.8 provides that the court may hold a new probation hearing and may modify the probationer's conditions of probation.

[9] We initially note that this court has held that "[a] defendant's 'probationary period' begins immediately after sentencing, even if his or her actual probation begins at a later date." *Kopkey v. State*, 743 N.E.2d 331, 339 (Ind. Ct. App. 2001), *trans. denied*; *see also Crump v. State*, 740 N.E.2d 564, 568 (Ind. Ct. App. 2000) ("Although Crump's actual probation had not yet begun, a defendant's 'probationary period' begins immediately after sentencing. The violation occurred after Crump was sentenced but before the conclusion of the probationary phases of his sentence. Thus, Crump was in his probationary

period.") (citations omitted); *Gardner v. State*, 678 N.E.2d 398, 401 (Ind. Ct. App. 1997) ("Once a defendant has been sentenced, the court may revoke or modify probation, upon a proper showing of a violation, at any time before the completion of the probationary period."); *Johnson v. State*, 606 N.E.2d 881, 882 (Ind. Ct. App. 1993) (holding that the trial court did not abuse its discretion in revoking the defendant's probation before the defendant completed his executed sentence).

[10] We also note that, in his petition for modification, Howe specifically alleged that he received a letter in January 2008 stating that, "[p]er court order," he was "not allowed any direct or indirect contact with the victims" and a letter in February 2013 stating that "it was the Court's opinion that any children would be included in the no contact order," and the February 2013 letter also stated that Howe "may request a modification to the terms; however; the Court may or may not grant it." Appellant's Appendix at 14-15, 23, 25. Howe argued that he would "abide by the court[']s no-contact order" but "believes it is wrong or unfair to include the minor child," and he asked for "relief to modify an order for protection" and "all other just, proper and appropriate relief." *Id.* at 16. Thus, Howe filed his petition for modification because he had been informed he could not have direct or indirect contact with the victims and that the children were included in the no contact order. Moreover, at the March 17, 2014 hearing, the trial court specifically informed Howe that all "the judge through the criminal case can do is indicate whether or not there's a No Contact" and

that "[a]ll they can do in this case is say whether or not there's a No Contact Order." Transcript at 16.

[11] Ind. Code § 35-38-2-2.3 addresses conditions of probation and provides in part that, "[a]s a condition of probation, the court may require a person to . . . [r]efrain from any direct or indirect contact with an individual . . . ." The Indiana Supreme Court has held that, when a court suspends part of a sentence, it can condition that suspension on no contact.[1] *Jarrett v. State*, 829 N.E.2d 930, 932 (Ind. 2005). While the statutory provision uses the phrase "an individual" to describe the person to be protected, there must be some nexus between the no contact order and the crime for which the defendant is being sentenced, as to interpret the statute otherwise would result in an absurdity, something which we will avoid. *See Nash v. State*, 881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008), *trans. denied*. This nexus may be demonstrated at the guilty plea hearing, sentencing hearing, or a post-trial hearing.

---

[1] In *Jarrett*, the Court recognized that the statutes establishing penalties for felonies did not authorize the imposition of a no contact order as part of an executed sentence. 829 N.E.2d at 932. Apparently in response to the Court's holding in *Jarrett*, the legislature enacted Ind. Code § 35-38-1-30, effective July 1, 2008, which provides that "[a] sentencing court may require that, as a condition of a person's executed sentence, the person shall refrain from any direct or indirect contact with an individual." In any event, the no contact order in this case was entered as a condition of Howe's probation and not his executed sentence.

[12] Howe committed the offenses in the presence of M., and the court imposed as a condition of probation that he have no direct or indirect contact with the victims. The statement of M.'s mother indicates that M. struggles with being afraid of the dark and that her mother and school deal with M.'s behaviors every day. Having knowledge of the nature of the physical altercation between Howe and her mother, the fact that M.'s grandmother was shot, and that M. was present in the residence while Howe committed the crimes, the trial court found that M. is an individual to be protected and not just the person physically injured during the January 2005 altercation. Thus, we conclude that there is a nexus between the no contact order and Howe's crimes. We also note that Howe is mistaken in his belief that M. is not an individual to be protected as a result of his crimes because he did not attempt to find her and "was focused on just the adults." Appellant's Brief at 9. While M. may not have been physically injured or directly physically attacked during the altercation in February 2005, there is little doubt that a child is a protected individual when her parents engage in a physical altercation involving a firearm, her grandmother is shot, and her father is incarcerated as a result of his crimes. M. is a person eligible for protection within the meaning of Ind. Code § 35-38-2-2.3. *See Hines v. State*, 856 N.E.2d 1275, 1284 (Ind. Ct. App. 2006) (holding that the trial court had discretion to prohibit defendant from residing within one mile of the victim given the statutory authority to prohibit direct or indirect contact with an individual), *trans. denied*.

[13]   We cannot say the terms of Howe's probation are not reasonably related to Howe's treatment or that there is no nexus between the no contact order and his crime. Howe did not request the trial court to question M. regarding her desires in his petition or at the hearing. Based upon the record, we cannot say that the trial court abused its discretion in denying his petition to modify the terms of his probation to permit contact with M. As indicated by the court below, Howe may petition the divorce court for a parenting time order and, depending upon the findings of the divorce court, request the criminal court for relief from the no contact order to the extent necessary to exercise any parenting time ordered.

## *Conclusion*

[14]   For the foregoing reasons, we affirm the trial court's order denying Howe's petition.

[15]   Affirmed.

Bailey, J., concurs.

Robb, J., concurs in result with separate opinion.

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Adam Anthony Howe, | January 30, 2015 |
| *Appellant-Petitioner,* | Court of Appeals Cause No. 12A02-1405-CR-320 |
| v. | Appeal from the Clinton Circuit Court |
| | The Honorable Bradley K. Mohler, Judge |
| State of Indiana, | |
| *Appellee-Respondent* | Cause No. 12C01-0501-FA-8 |

**Robb, Judge, concurring in result.**

[17]   I respectfully concur in the majority's determination that the trial court did not abuse its discretion in denying Howe's petition to modify the conditions of his probation, but I do so for reasons entirely different than the majority.

[18]   Howe was sentenced to a term of years with ten years suspended to probation and as a special condition of probation, the trial court ordered that Howe not have contact with "the victims" of his crime. Record on Appeal at 8. Indiana Code section 35-38-2-2.3(a)(18) allows a trial court to impose as a condition of probation that the defendant refrain from contact with "an individual." In general, I would agree that the language of this statute could allow such an order with respect to someone who witnessed a crime even if not a direct target of it. *Compare* Ind. Code § 35-38-2-2.3(a)(18) (referencing a no-contact order as to "an individual") *with* Ind. Code § 35-40-4-8 (defining a "victim" for purposes of the victim rights statute as "a person that has suffered harm as a result of a crime that was perpetrated directly against the person."). I would not agree, however, that this specific order encompasses M. During the sentencing hearing, this term was discussed at some length:

> THE COURT: Well, from what I – I can see in this, *they . . . really don't want you around uh, when you uh, get out . . . .*
> DEFENDANT: Yes.
> * * *
> THE COURT: I'd say you might respect their wishes in that regard. Okay?
> DEFENDANT: Yes.
> THE COURT: The . . . Court can uh, impose that uh, if . . . you want, that, that just be a condition of your probation.
> THE STATE: Judge, I – that was supposed to be in the Plea Agreement, I think. [Defense counsel] and I agreed to that.

[DEFENSE COUNSEL]:  That's no problem to have a condition to
. . . *stay away from [M.'s grandmother] and [M.'s mother]* . . . .
* * *
THE COURT:  . . . And you would agree to that, to be a special
condition of probation *after you're out*; correct?
DEFENDANT:  That's fine . . . .
* * *
THE COURT:  All right.  So, that – that would uh, if you're willing to
accept that as a – condition of probation, we'll – we'll put that in there.
Hopefully that will be better for the family.
DEFENDANT:  That's fine.
THE COURT:  *During those ten years.*
DEFENDANT:  That's fine.
THE COURT:  All right.  The uh, the sentence is uh, is the fifty-two
years uh, of which ten is suspended and – and the ten years on
probation.  *And, so, that can be ten years over your head with that special
condition of probation.*

Record on Appeal at 19-21 (emphasis added).  M. was never mentioned during this discussion, and I would extrapolate from this that the trial court's use of the word "victims" encompassed only M.'s grandmother and mother who were the only individuals discussed.[2]

---

[2]  Because the statute authorizes a no-contact order as to "an individual" (subject to our caselaw requiring the individual have some nexus to the crime), this confusion could have been avoided if the trial court had entered a more specific order, naming the individuals with whom Howe was prohibited contact rather than using a generic term open to interpretation.

Regardless of whether M. could be "an individual" protected by a no-contact order issued a condition of probation in general or whether the trial court intended to include M. within the term "victims" for purposes of this specific no-contact order, I believe the no-contact order is effective only while Howe is on probation, which will not begin until 2023 at the earliest. The no-contact order was entered pursuant to the authorization of Indiana Code section 35-38-2-2.3(18) as a condition of Howe's probation. I acknowledge the line of cases cited by the majority holding that a defendant's "probationary period" begins immediately upon sentencing, *see* slip op. at ¶ 9, and I do not dispute that Howe is in his "probationary period." However, I do not believe that is necessarily the end of the inquiry.[3]

Many of the conditions of probation authorized by section 35-38-2-2.3 are conditions that would be relevant or appropriate only while the person was actually "on probation"—i.e., no longer incarcerated. *See, e.g.*, Ind. Code § 35-38-2-2.3(3) ("[a]ttend or reside in a facility established for the instruction, recreation, or residence of persons on probation."); Ind. Code § 35-38-2-2.3(9) ("[r]efrain from possessing a firearm or other deadly weapon . . . ."); Ind. Code

---

[3] Moreover, I note these cases concern the interpretation of "probationary period" and the prospective revocation of probation pursuant to Indiana Code section 35-38-2-3, which is not (yet) the procedural posture of this case.

§ 35-38-2-2.3(12) ("[r]emain within the jurisdiction of the court . . . ."); *see also* *Gardner*, 678 N.E.2d at 401 n.7 (noting there are some conditions of probation that are not applicable during an executed term and are therefore not amenable to prospective violation, such as the standard condition of probation that a defendant report to his or her probation officer, which would be both difficult and impractical while the defendant is incarcerated).

[22] Here, I believe the specific terms under which the no-contact order was imposed make it, like the conditions cited above, applicable only when Howe is actually serving his probation. The trial court made clear its intention for the no-contact order to apply only after Howe left DOC during the sentencing hearing as reflected in the portion of the hearing quoted above. M.'s mother's statement to the court in response to Howe's motion reflects her understanding of that, as well. *See* Record on Appeal at 34 ("There is also a no contact order after he gets released in 2023 for 10 yrs."). The majority notes that Howe received letters from the probation department after he sent M. a birthday card informing him he was not allowed to have contact with the victims of his crime and also informing him that "it was the Court's opinion that any children would be included in the no contact order [and the order] will remain in effect until probation ends." Slip op. at ¶ 3. If the probation department consulted the trial court regarding the no-contact order before sending those letters, I first note that the trial court cannot change the scope and duration of the written order by simply stating at a later date that it actually intended something else. I further note that if that is what happened, the probation department engaged in

an inappropriate ex parte conversation with the trial court. And if the probation department acted on its own, it should not have asserted its own interpretation of the order under the guise of the trial court's authority. Accordingly, irrespective of what the probation department asserted in its letters, I believe Howe is not subject to the terms of the no-contact order until he is released from DOC.

[23] As further support for my position, I note that the trial court was authorized by Indiana Code section 35-38-2-2.3 to impose a no-contact order as a condition of Howe's probation, but there was no similar provision authorizing a no-contact order to be imposed as part of an executed sentence until Indiana Code section 35-38-1-30 was enacted in 2008. If a no-contact order imposed under section 35-38-2-2.3 covered the "probationary period," there would have been no need to add section 35-38-1-30 to specifically cover the executed term.[4]

---

[4] I leave for another day discussion of whether and to what extent section 35-38-1-30 would authorize the addition of a no-contact order to sentences that were imposed prior to its enactment, although I acknowledge the incongruity in Howe having no restrictions in this regard for the better part of twenty years, followed by ten years in which he is restricted from contact with certain people. I simply note that a no-contact order is not a condition of Howe's executed sentence, and Howe is not subject to this special condition of probation when he is not yet on probation.

It is because Howe is not yet serving probation, however, that I agree with the majority that the trial court did not abuse its discretion in denying Howe's motion to modify its terms.  As of now, there is nothing to modify.