## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 31 2018, 9:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sarah R. Schnieb, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 31, 2018 <br><br> Court of Appeals Case No. <br> 08A02-1710-CR-2403 <br><br> Appeal from the Carroll Superior Court <br><br> The Honorable Kurtis G. Fouts, Judge <br><br> Trial Court Cause No. <br> 08D01-1705-F6-48 |

**Bailey, Judge.**

# Case Summary

[1] Sarah R. Schnieb ("Schnieb") appeals the no-contact order issued as a condition of her probation. She contends that the trial court abused its discretion because the no-contact order, as applied to the father of her children, Leslie Field ("Field"), violates her constitutional right to raise her children.

[2] We affirm.

# Facts and Procedural History

[3] On May 24, 2017, Field was in a car accident. Early in the morning of May 25, Delphi Police Officer Alexander Parkinson ("Officer Parkinson") went to Field's residence to speak with him about the accident. Officer Parkinson encountered Schnieb, Field's girlfriend at the time, at Field's residence. Officer Parkinson knew Schnieb from past dealings in his police work, and he believed Schnieb was under the influence of methamphetamine. Officer Parkinson contacted the Indiana Department of Child Services ("DCS").

[4] Around 9:15 that same morning, Delphi Police Officer Justin Wilson ("Officer Wilson") and a DCS worker went to the residence to speak with Schnieb. Schnieb was extremely frantic and was making fast choppy movements. Officer Wilson believed Schnieb was "highly impaired/tweaking on meth" and that she was incapable of caring for any child. Appellant's App. Vol. II ("App.") at 11. Schnieb allowed Officer Wilson and the DCS worker into the residence, and when they stepped inside, Officer Wilson observed a child who appeared to be

between the ages of six and eight sleeping on the couch in the living room. There was also a ten-month-old child sleeping in one of the bedrooms.

[5] To avoid waking the children, the adults moved inside the kitchen where Officer Wilson observed two lines of what he believed to be methamphetamine near the microwave. Schnieb confirmed that the substance was methamphetamine and volunteered that it belonged to Field. Schnieb then stated that she smoked spice in the garage, and she led Officer Wilson into the garage to show him where she normally smoked spice. Officer Wilson could smell the odor of spice in the area and saw burnt rolling papers and ash from spice in the bottom of a garbage can. Officer Wilson placed Schnieb under arrest. At the Carroll County Jail, Schnieb admitted to the jail staff that she had used methamphetamine.

[6] The State charged Schnieb with possession of methamphetamine, as a Level 6 felony;[1] maintaining a common nuisance, as a Level 6 felony;[2] and neglect of a dependent, as a Level 6 felony.[3] On July 10, 2017, pursuant to a plea agreement, Schnieb pleaded guilty to Level 6 felony possession of methamphetamine.

---

[1] Ind. Code § 35-48-4-6.1(a).

[2] I.C. § 35-45-1-5.

[3] I.C. § 35-46-1-4.

[7]    At Schnieb's sentencing hearing on July 27, the trial court reviewed the presentence investigation report and heard testimony from Schnieb. Schnieb reported that Field is the father of both of her children and that she had been in a ten-year relationship with Field at the time of her arrest. Schnieb had a long history of illegal drug use and failed attempts at rehabilitation. She had been convicted of misdemeanor domestic battery in 2012 and violated her probation in 2013 when she tested positive on a drug screen. Schnieb reported that both she and Field had relapsed into drug use. Schnieb stated that she started using drugs again because Field started using again. App. at 28.

[8]    At the time of sentencing, Schnieb was admittedly addicted to methamphetamine and spice. As a result of her drug use, DCS had removed Schnieb's two children from her home and placed them with Schnieb's parents. Schnieb testified that she had a serious drug problem and stated she was willing to comply with substance abuse treatment and anything DCS wanted her to do to get her children back. Schnieb also testified that she understood that she needed to stay away from people who have controlled substance issues, and she agreed to do so. Tr. at 8.

[9]    The trial court sentenced Schnieb to two years and 180 days executed in the Indiana Department of Correction, with a recommendation that she participate in the purposeful incarceration program. The trial court also ordered Schnieb to have no direct or indirect contact with several people involved in drug use and dealing, including Field. The trial court explained its no-contact order regarding Field as follows:

And I'm going to put another name in here and this is going to be a hard one. But Les Field is another name. You're not going to have any contact with Les because you're both addicts. *[Y]ou're going to have contact as is required to comply with the Court's orders in the CHINS case.* But you're a trigger for Les and Les is a trigger for you unless somebody can show me otherwise. The consistent thing in your life has been Les. And Les is consistently us[ing] controlled substances and so we're not going to have any contact with Les until we decide it's a good idea. And Les isn't going to have any contact with you. Um, very difficult. Very difficult.

\* \* \*

[The children] should be with you and maybe Les. Although I'm really troubled about the dynamic of your relationship. I almost never would want to enter an order where people that were either married or had children together shouldn't have contact but I mean the proof is pretty stark that this is a toxic situation. So we'll just have to see.

Tr. at 26-27 (emphasis added).

[10]  On August 2, 2017, Schnieb moved the trial court to modify her executed sentence to community corrections or probation. In her motion, Schnieb informed the trial court that: she has two children who had been placed with her parents as part of a pending Child in Need of Services ("CHINS") case; substance abuse treatment was available to her through the CHINS case; she could stay in her parents' home with her children, and DCS was in support of that plan; and she "is willing to comply with all terms and conditions of probation…." App. at 32-33. On October 5, 2017, after a hearing, the trial court granted Schnieb's request to modify her sentence. The trial court stayed

the balance of Schnieb's executed sentence and placed her on probation through the Carroll County Probation Department. As conditions of probation, Schnieb was required to: participate in and successfully complete the Open Arms Program; have no direct or indirect contact with certain persons, including Field; and "*comply with all orders in [the pending CHINS cases,]* 08D01-1709-JC-19 and 08D01-1709-JC-20." *Id*. at 51 (emphasis added).

[11] This appeal ensued.

# Discussion and Decision

[12] As an initial matter, we address the State's contention that Schnieb waived her claim that the no-contact order violates her constitutional right to raise her children by failing to make that argument to the trial court. We disagree. In *Meunier-Short v. State,* 52 N.E.3d 927, 936 (Ind. Ct. App. 2016), we held that a defendant is not required to object to his probation conditions in order to preserve the issue for appeal. In so holding, we noted that the appeal of a probation condition is similar to an appeal of a sentence, which we may review "'without insisting that the claim first be presented to the trial judge.'" *Id*. (quoting *Piercefield v. State*, 877 N.E.2d 1213, 1218 (Ind. Ct. App. 2007), *trans. denied*). Thus, Schnieb has not waived her appeal of the no-contact order issued as a condition of probation.

[13] A trial court has broad discretion in determining the appropriate conditions of a defendant's probation. *Howe v. State*, 25 N.E.3d 210, 213 (Ind. Ct. App. 2015).

That discretion is limited by the principle that the conditions imposed must be reasonably related to the treatment of the defendant and the protection of public safety. *Id*. And,

> [w]here, as here, the defendant challenges a probationary condition on the basis that it is unduly intrusive on a constitutional right, we will evaluate that claim by balancing the following factors: (1) [t]he purpose to be served by probation, (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be enjoyed by probationers, and (3) the legitimate needs of law enforcement.

*Wilder v. State*, 91 N.E.3d 1016, 1024 (Ind. Ct. App. 2018) (quoting *Smith v. State*, 779 N.E.2d 111, 117 (Ind. Ct. App. 2002), *trans. denied*).

[14] Indiana Code Section 35-38-2-2.3(a)(18) allows a court to require, as a condition of probation, that the probationer "[r]efrain from any direct or indirect contact with an individual." However, there "must be some nexus between the no contact order and the crime for which the defendant is being sentenced." *Howe*, 25 N.E.3d at 214. For example, in *Howe v. State*, we held that there was a nexus between the defendant's crime of battery and the order prohibiting the defendant from contacting a child in front of whom he had committed the battery. 25 N.E.3d at 215.

[15] Here, Schnieb's crime is possession of methamphetamine. In the presentence investigation interview, she admitted to continued substance abuse and to being "unable to control her urge to use." App. at 27. She also stated that the reason she relapsed into drug use was because Field had relapsed into drug use. *Id*. at

28.   The trial court found that Field was a "trigger" for Schnieb's drug use, and that Field's and Schnieb's situation was "toxic."  Tr. at 26-27.  Thus, there is a nexus between Schnieb's crime of drug possession and the order prohibiting her from contacting Field, who triggers Schnieb's drug use.  And the no-contact order serves the purpose of Schnieb's probation, which is to facilitate her recovery from severe drug addiction and the resultant criminal behavior of possessing illegal drugs.  The no-contact order thereby also serves the legitimate needs of law enforcement to keep Schnieb from possessing illegal drugs.

[16]   Moreover, the no-contact order does not unduly interfere with Schnieb's constitutional right to raise her children, as she claims.  The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution.  *K.W. & B.S. v. Ind. Dep't of Child Servs. (In re A.S.)*, 17 N.E.3d 994, 1001-02 (Ind. Ct. App. 2014), *trans. denied*.  However, that right is not absolute and must be subordinated to the best interests of the children.  *Id.* at 1002.  Schnieb's and Field's children are currently the subject of a Child in Need of Services ("CHINS") case, which the trial court acknowledged in the no-contact order.  The trial court specifically stated in both its oral and written sentencing orders that Schnieb must comply with any orders in the CHINS case.  Obviously, such orders could include orders that Schnieb have contact with Field, as the trial court noted at the sentencing hearing.  Tr. at 26.  Thus, the no-contact order does not unduly intrude on Schnieb's constitutional right to raise her children with their father; rather, it reduces the chances of her further drug use and possession while also

permitting her to contact Field for co-parenting purposes at whatever frequency and in whatever manner the CHINS court deems to be in the children's best interest.

[17] Affirmed.

Crone, J., and Brown, J., concur.