


FILED

Oct 06 2025, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Jeremiah R. Mitchell,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

October 6, 2025

Court of Appeals Case No.
25A-CR-1322

Appeal from the Washington Superior Court

The Honorable Dustin Houchin, Judge

Trial Court Cause No.
88D01-2411-F6-760

**Opinion by Judge Brown**
Judges Felix and Scheele concur.

**Brown, Judge.**

[1] Jeremiah R. Mitchell appeals the trial court's denial of his motion to modify the terms of his probation. We affirm.

**Facts and Procedural History**

[2] On November 10, 2024, Mitchell was at his sister's house with his two-year-old child ("Juvenile 2") and his one-year-old child ("Juvenile 3"), when he called his wife and the children's mother, J.M., and asked her to come pick up the children. J.M. arrived to pick up the children, and she and Mitchell argued. J.M. took the children to the home of her mother, J.W. J.M. intended to leave the children with her mother; however, she passed Mitchell in his car when she was leaving, so she returned. When J.M. returned, Mitchell was holding Juvenile 3 in his arms and yelling at her, "[Y]ou're not going to take my f---ing kids." Appellant's Appendix Volume II at 40. While holding Juvenile 3, Mitchell grabbed J.M. by the throat, pushed her, and swept his leg under her causing her to trip and fall. Mitchell also ripped out some of J.M.'s hair. The altercation occurred in the presence of J.W.'s minor son ("Juvenile 1"). J.W. came outside and hit Mitchell on the head. Mitchell then used the same "leg sweep technique" that he had used on J.M. on J.W. *Id.* at 39. At some point during the commotion, Juvenile 3 developed a "red mark" on his cheek. *Id.* at 40. J.W. took Juvenile 3 out of Mitchell's arms, and Mitchell entered his Ford Focus and sped away, "leaving tire marks in the grass." *Id.*

[3] J.M. subsequently called 911 and reported that Mitchell had battered her and was armed with a knife. As Washington County Sheriff's Department Deputies were responding to the call, they received a report that Mitchell had left the scene in a 2012 silver Ford Focus. The license plate for the vehicle expired in August 2024. Accordingly, when officers located Mitchell, they conducted a traffic stop. Officers read Mitchell his *Miranda* warnings, and he agreed to speak with them. Officers could smell an "odor of intoxicating beverage coming from his breath and person" and they could see "that his eyes were glassy and bloodshot." *Id*. at 38. Mitchell agreed to take a portable breath test which revealed a result of approximately 0.15 grams of alcohol per 210 milliliters of breath. A subsequent chemical test indicated Mitchell had a blood alcohol content of 0.17 grams of alcohol per 100 milliliters of blood.

[4] On November 12, 2024, the State charged Mitchell with two counts of domestic battery as level 6 felonies, operating a vehicle while intoxicated endangering a person as a class A misdemeanor, and operating a vehicle with an alcohol concentration equivalent of 0.15 or more as a class A misdemeanor. At the State's request, the court issued no contact orders directing Mitchell not to have any contact with J.M., J.W., and Juveniles 1, 2, and 3.

[5] On December 18, 2024, Mitchell entered into a plea agreement with the State pursuant to which he agreed to plead guilty to one count of domestic battery as a level 6 felony and one count of operating a vehicle while intoxicated as a class A misdemeanor. As part of the plea agreement, Mitchell also specifically agreed that the no contact orders previously issued "shall . . . continue as a term

of probation, parole or executed sentence." *Id*. at 76. The court accepted the plea agreement and sentenced Mitchell to 730 days executed and 652 days suspended to supervised probation.

[6] On January 27, 2025, Mitchell filed a pro se request that the no contact orders for his wife and two children "be dropped." *Id*. at 86. The court held a hearing on February 26, 2025. After hearing "sworn testimony, and the State of Indiana's objection to terminate," the court denied Mitchell's request, concluding that the court "has no authority to modify the defendant's sentence or terms without the consent of the State." *Id*. at 88.

[7] On April 22, 2025, Mitchell, by counsel, filed a Motion to Modify Conditions of Probation again asking the court to remove the no contact orders, arguing that Ind. Code § 35-38-2-1.8 grants the court authority to modify the terms of probation to remove the no contact orders. The State objected arguing that the no contact orders were a specific term of the plea agreement and that the court lacked authority to modify the plea agreement without the State's consent, and the State did not consent.

[8] The court held a hearing on April 30, 2025. Both Mitchell and J.M. testified that they desired removal of the no contact orders as a term of probation.[1] The court entered a detailed order on May 6, 2025, denying Mitchell's motion for

---

[1] At the conclusion of the hearing, Mitchell's counsel requested that "the no contact orders be modified as a term of probation to allow for lawful contact" with J.M., Juvenile 2, and Juvenile 3. Transcript Volume II at 19.

modification. The court found that it lacked the authority "to alter the terms of probation . . . without the consent of the parties" and "even if the court had authority to modify the probation conditions in the manner requested by [Mitchell], it would decline to do so." *Id*. at 3.

## Discussion

[9] Mitchell asserts that the trial court "erred as a matter of law by concluding it lacked authority under Indiana Code § 35-38-2-1.8 to modify a no-contact order that was imposed as a condition of probation." Appellant's Brief at 4. He further argues that the court's refusal to modify the no contact orders "when modification was knowingly and voluntarily requested by both the protected adult and the appellant, constituted a violation of due process or an abuse of discretion." *Id*.

[10] We will not set aside a trial court's ruling on a motion to modify the conditions of probation unless the court has abused its discretion. *Howe v. State*, 25 N.E.3d 210, 213 (Ind. Ct. App. 2015). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances. *Bennett v. State*, 119 N.E.3d 1057, 1058 (Ind. 2019).

[11] Regarding the modification of conditions of probation, Ind. Code § 35-38-2-1.8(b) provides that the trial court "may hold a new probation hearing at any time during a probationer's probationary period: (1) upon motion of the probation department or upon the court's motion; and (2) after giving notice to

the probationer." At such hearing, "the court may modify the probationer's conditions of probation." Ind. Code § 35-38-2-1.8(c).

[12] As found by the trial court, neither the probation department nor the court sought to modify Mitchell's probation and thus, the plain language of Ind. Code § 35-38-2-1.8 is inapplicable to the case at bar. In other words, contrary to Mitchell's assertion, the plain language of Ind. Code § 35-38-2-1.8 does not grant (or even address) the trial court's authority to modify the conditions of probation upon a defendant's motion. *See Wilson v. State*, 189 N.E.3d 231, 234 (Ind. Ct. App. 2022) (noting that "it is just as important to recognize what the statute does not say as to recognize what it does say" and "[w]e assume the legislature chose the words it did for a reason"); *Murphy v. State*, 113 N.E.3d 776, 781 (Ind. Ct. App. 2018) (observing that "[a] statute must be held to mean what is clearly and plainly expressed therein"). Accordingly, we conclude that Mitchell's reliance on Ind. Code § 35-38-2-1.8 is misplaced and does not provide him with a procedural mechanism to challenge the continuation of the no contact orders as a term of his probation.

[13] Moreover, even assuming the above statutory language permitted the court, upon Mitchell's motion, to consider his request for modification, the court lacked the authority, absent the State's consent, to grant Mitchell's request to remove the no contact orders because the continuation of the orders was specifically required by the parties' plea agreement. Ind. Code § 35-35-3-3(e) provides that "[i]f the court accepts a plea agreement, it shall be bound by its terms." Additionally, Ind. Code § 35-38-1-17(e) specifically provides that "if

the convicted person was sentenced under the terms of a plea agreement," the trial court "may not, without the consent of the prosecuting attorney, reduce or suspend the sentence and impose a sentence not authorized by the plea agreement." Mitchell cites no authority, and we are unaware of any, that would permit the trial court, absent the consent of the prosecutor, to alter the punitive terms of his probationary sentence as provided by his plea agreement, which in this case includes the continuation of the no contact orders.[2]

[14] To the extent that Mitchell asserts that the trial court violated his due process rights or abused its discretion in declining to "consider the merits" and "weigh the evidence in this case," Appellant's Brief at 19, 23, we observe that the court here specifically found, based upon the merits, that "even if the court had the authority to modify the probation conditions in the manner requested by [Mitchell], it would decline to do so." Appellant's Appendix Volume II at 3. Indeed, the court noted:

---

[2] In *Freije v. State*, 709 N.E.2d 323, 325 (Ind. 1999), the Indiana Supreme Court acknowledged that in the context of sentencing pursuant to a plea agreement, in "the absence of a plea term," the trial court's discretion regarding imposing probation conditions is limited. The Court explained that while a "condition of probation which imposes a substantial obligation of a punitive nature is indeed part of the sentence and penalty and must be specified in the plea agreement . . . trial courts are free to impose administrative or ministerial conditions 'such as reporting to the probation department, notifying the probation officer concerning changes in address or place of employment, supporting dependents, remaining within the jurisdiction of the court, [and] pursing a course of vocational training [.]'" 709 N.E.2d at 324-325 (quoting *Disney v. State*, 441 N.E.2d 489, 494 (Ind. Ct. App. 1982)). We agree with the trial court that "[c]ertainly, a no contact order" is punitive in nature and if "a court may not, without the consent of the parties, add to the probation conditions a no contact order that was not specified in the plea agreement, then i[t] follows that a court may not remove one that was." Appellant's Appendix Volume II at 3.

This case arose because [Mitchell's] wife called 911 requesting help because [he] had battered her and that [he] was armed with a knife. [Mitchell] fled the residence prior to the police arriving but was later stopped and found to be operating a vehicle while intoxicated. During the traffic stop, [Mitchell] admitted to battering his wife in front of his children. This Court finds it altogether reasonable that the victims in this case should be protected from [Mitchell]. Incarceration is certainly the most effective way to do that. In lieu of incarceration, [Mitchell] was released to probation with the no contact orders as a term. While contact between a husband and his wife and a father and his children is valuable, the family's safety is paramount.

*Id*. at 3-4. We cannot say that the court's conclusion was against the logic and effect of the circumstances before it.

[15] For the foregoing reasons, we affirm the judgment of the trial court.

[16] Affirmed.

Felix, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Ryan D. Bower
Washington County Public Defender's Office
Salem, Indiana

ATTORNEYS FOR APPELLEES

Theodore E. Rokita
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana